ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION #2

Docket No. 68813. Submitted February 7, 1984, at Lansing.—Decided April 17, 1984. Leave to appeal applied for.

In 1977 the Michigan Public Service Commission established a System Availability Incentive Provision (SAIP) following hearings before the commission. The purpose of the SAIP was to encourage applicant, Detroit Edison Company, to improve the availability of its electric generating units. The attorney general thereafter appealed in the Ingham Circuit Court from three commission orders implementing the SAIP for the years 1978, 1979, and 1980 and allowing Detroit Edison Company rate increases pursuant to the SAIP. The circuit court consolidated the appeals and granted Detroit Edison Company's motion to intervene as a defendant. The circuit court, Robert Holmes Bell, J., affirmed the commission's ruling by opinions and order. The attorney general appeals by leave granted. *Held:*

1. The establishment of the SAIP comes within the commission's statutory power, although it is not specifically authorized by statute or case law.

2. Annual rate increases pursuant to the SAIP are not required to be preceded by full and complete hearings as are held in main rate cases. The full and complete hearing, envisioned by the statute regarding the fixing of electricity rates, was held prior to the commission's issuance of the order which originally established the SAIP in 1977. The SAIP was adopted in that context, with all relevant factors being considered. The annual implementation hearings were ancillary to the original 1977 hearing and were for the limited purpose of determining the increase or decrease in accordance with the SAIP formula previously established in the main rate case.

3. The commission can issue valid annual orders allowing rate increases or decreases based on changes in the system

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 64 Am Jur 2d, Public Utilities §§ 274, 281, 282, 284, 285.
[2] 64 Am Jur 2d, Public Utilities § 127
[3] 64 Am Jur 2d, Public Utilities §§ 230, 232, 235 *et seq.*
[4-6] 64 Am Jur 2d, Public Utilities §§ 240, 244, 266.
[6] 64 Am Jur 2d, Public Utilities § 276.

availability without holding a full and complete hearing each year as is done in the main rate case when the single-factor hearing was anticipated and provided for in the principal rate case and order.

4. The SAIP and the three annual rate increases do not violate the nine-month provision of 6a(2) of the public service commission act.

5. The SAIP does not suspend a commission order providing for increased rates.

Affirmed.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — JUDICIAL REVIEW.

Appellate review of Public Service Commission orders is narrow in scope; all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the commission are deemed, prima facie, to be lawful and reasonable (MCL 462.25; MSA 22.44).

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — ORDERS — BURDEN OF PROOF.

A person attacking an order of the Public Service Commission must prove by clear and satisfactory evidence that the order complained of is unlawful or unreasonable (MCL 462.26; MSA 22.45).

3. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — AUTHORITY.

The public service commission act confers broad discretion and authority upon the Public Service Commission (MCL 460.6; MSA 22.13[6]).

4. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATE ADJUSTMENTS — HEARINGS.

The Public Service Commission can issue valid annual orders allowing electricity rate increases or decreases based on changes in the system availability without holding a full and complete hearing each year as is done in a main rate case when the single-factor hearing was anticipated and provided for in the principal rate case and order.

5. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — NINE-MONTH RULE.

The Public Service Commission is not required to complete a hearing on a petition within nine months of the date of the filing of the petition; the nine-month provision is only a goal, and the only sanction imposed on the commission for failing to

meet the nine-month time limit is that the commission report the delay to the Governor and Legislature (MCL 460.6a[4]; MSA 22.13[6a][4]).

6. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATES — LEGIS-
   LATIVE FUNCTION.
   Public utility ratemaking is a legislative function; legislative policy determinations by the Public Service Commission, when properly made, are not reviewable by the courts.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Anderson,* Assistant Attorney General, for the Attorney General.

*Don L. Keskey, Leo H. Friedman,* and *William H. Schwan,* Assitants Attorney General, for the Public Service Commission. *A. Robert Pierce, Jr., Bruce R. Maters,* and *David L. Clark,* for the Detroit Edison Company.

Before: CYNAR, P.J., and J. H. GILLIS and R. C. ANDERSON,* JJ.

PER CURIAM. The Attorney General appeals as of right from the December 13, 1982, order of Ingham County Circuit Court Judge Robert Holmes Bell which affirmed three Michigan Public Service Commission (commission) orders allowing Detroit Edison Company rate increases pursuant to the "System Availability Incentive Provision" (SAIP).

The purpose of the challenged increase was to encourage Edison to improve the availability of its electric generating units.

The SAIP was first established in MPSC Case No. U-5108, by order dated May 27, 1977. After 85 days of hearings before the commission concerning Edison's rate base, rate of return, adjusted net

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

operating income, revenue deficiency, rate design, and service rules, and after comments from parties, staff, and the hearing referee, the commission made the following findings:

"High system availability is crucial to the ability of applicant to provide its customers with reliable service at low cost. The commission believes that a specific incentive will encourage applicant to make the required extra effort to achieve the maximum system availability. If high levels of availability are achieved, the savings to customers should exceed the increased equity return. Conversely, if applicant's system availability falls unreasonably low, applicant should bear some of the resulting increased costs.

"The commission therefore finds that the staff's proposal that the commission establish a system availability incentive provision is reasonable and should be adopted for jurisdictional electric retail service customers.

"The commission finds that system availability should be determined on a calendar year basis using the East Central Area Reliability method."

The commission based its conclusion on the testimony of staff witness Fischer:

"Staff witness Fischer proposed the establishment of an incentive provision to encourage applicant to improve the availability of its electric generating units. Unit availability is the fraction of a total time period during which an electric generating unit is capable of producing electricity. A unit may be available or only partially available because of scheduled maintenance or because of an unscheduled, forced reduction of generating capability. Mr. Fischer stated that ideally, considering required preventive maintenance, a generating unit should be available at full capacity about 85% of the time. An electric system with a high availability of its generating units has relatively lower customer bills in the short and long run than a system with low availa-

bility. High availability of low cost generating units reduces fuel and purchased power costs which results immediately in lower customer bills. Over the long run, sustained high availability reduces the reserve requirements, which also reduces customer bills."

The commission set forth the procedure as follows:

"The commission finds that the record in this proceeding should be kept open for the receipt of evidence and the adjustment of rates, if any be necessary, according to the following procedure:

"During the first week in April of each year, applicant should file prepared testimony and supporting exhibits setting forth the average system availability for the preceding calendar year. As soon as practicable after the filing of applicant's material, there should be hearings for the purpose of cross-examination of applicant's witnesses. The staff should perform an engineering review of applicant's system availability during the period in question and place a report on the record. After the close of the hearing, the administrative law judge should make a report and recommendation. After reviewing the record, the commission shall determine whether applicant's authorized rate of return will remain unchanged, or be altered in accordance with the scale established below. If there is either an increase or decrease in the authorized rate of return, the rates should be adjusted to accomplish the change, using the capital structure and other pertinent rate calculation elements found to be proper in this opinion and order. The rates should be adjusted an appropriate number of mills per kWh based on sales during the calendar year in question.

"The positive element of the incentive provision scale should be low enough to be achievable by applicant, but not so low as to virtually guarantee an increased rate of return. The negative element should be high enough to be meaningful but not so high as to ensure a reduction in applicant's return.

"The commission finds the following scale to be reasonable:

| "Annual Average System Availability | Equity Return Incentive Adjustment |
|---|---|
| 0 – 70% | –.25% |
| 70.1 – 80% | -0-% |
| 80.1 – 85% | +.25% |
| 85.1 – 100% | +.50%" |

No appeal was taken from this order in MPSC Case No. U-5108 which originally established the SAIP for Edison. Appeals from three commission orders implementing the SAIP for the years 1978, 1979, and 1980 were consolidated in the circuit court. On December 13, 1982, Ingham County Circuit Court Judge Robert Holmes Bell affirmed the commission's ruling by opinions and order. The Attorney General now appeals to this Court.

The Attorney General argues on appeal that the SAIP violates several regulatory statutes.

Appellate review of Public Service Commission orders is narrow in scope. Under MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the commission are deemed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973); *Consumers Power Co v Public Service Comm,* 65 Mich App 73; 237 NW2d 189 (1975); *Attorney General v Public Service Comm,* 122 Mich App 777, 796; 333 NW2d 131, *lv den* 418 Mich 886 (1983). The person attacking an order of the commission must prove by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. MCL 462.26; MSA 22.45; *Lansing v Public Service Comm,* 330 Mich 608; 48 NW2d 133 (1951); *Michigan Bell Telephone Co v Public Service Comm,* 85 Mich App 163; 270

NW2d 546 (1978); *Attorney General v Public Service Comm, supra,* pp 796-797.

Although not specifically authorized by statue or case law, the establishment of the System Availability Incentive Provision comes within the commission's statutory power.

The public service commission act confers broad discretion and authority upon the Public Service Commission. The act provides, in part, that:

"(1) The public service commission is vested with complete power and jurisdiction to regulate all public utilities in the state except a municipally owned utility, the owner of a renewable resource power production facility as provided in section 6d, and except as otherwise restricted by law. The public service commission is vested with the power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of such public utilities. The public service commission is further granted the power and jurisdiction to hear and pass upon all matters pertaining to, necessary, or incident to the regulation of all public utilities, including electric light and power companies, whether private, corporate, or cooperative, gas companies, water, telephone, telegraph, oil, gas, and pipline companies, motor carriers, and all public transportation and communication agencies other than railroads and railroad companies." MCL 460.6; MSA 22.13(6).

The Attorney General next argues that the system is illegal because it fails to comply with § 7 of the electric act which provides, in part:

"In determining the proper price [of electricity], the commission shall consider and give due weight to all lawful elements properly to be considered to enable it to determine the just and reasonable price to be fixed

for supplying electricity, including cost, reasonable return on the fair value of all property used in the service, depreciation, obsolescence, risks of business, value of service to the customer, the connected load, the hours of the day when used and the quantity used each month". MCL 460.557; MSA 22.157.

The Attorney General contends that the SAIP fixes rates while completely ignoring any consideration of the elements specified in the above portion of the statute.

We disagree. Annual rate increases pursuant to the SAIP are not required to be preceded by full and complete hearings as are held in main rate cases. *Attorney General v Public Service Comm,* 122 Mich App 777; 333 NW2d 131 (1983). The full and complete hearing, as envisioned by the statute, was held prior to the issuance of the order originally establishing the system in 1977. The SAIP was adopted in that context, with all relevant factors being considered. The annual implementation hearings were ancillary to that original hearing and were for the limited purpose of determining the increase or decrease in accordance with the SAIP formula previously established in the main rate case.

We hold, therefore, that the commission can issue valid annual orders allowing rate increases or decreases based on changes in the system availability without holding a full and complete hearing each year as is done in the main rate case when the single-factor hearing was anticipated and provided for in the principal rate case and order.

The System Availability Incentive Provision and the three annual rate increases do not violate the nine-month statute, § 6a(2), of the public service commission act which provides:

"(2) The commission shall adopt such rules and procedures for the filing, investigation and hearing of petitions or applications to increase or decrease utility rates and charges as the commission finds necessary or appropriate to enable it to reach a final decision with respect to such petitions or applications within a period of 9 months from the filing thereof." MCL 460.6a; MSA 22.13(6a).

As was stated in *Detroit Edison Co v Public Service Comm,* 127 Mich App 499, 508-509; 342 NW2d 273 (1983):

"The nine-month provision of the statute is not a requirement; it is only a goal. The sanction imposed by the statute for noncompliance with the nine-month period is merely that the commission report the delay to the Governor and Legislature. Former MCL 460.6a(3); MSA 22.13(6a)(3), now § 6a(4)."

Citing *General Telephone Co of Michigan v Public Service Comm,* 341 Mich 620; 67 NW2d 882 (1954), the Attorney General contends that the SAIP is illegal because Michigan law does not permit rewarding or penalizing a utility for good or poor service, and because the provision is simply an unearned bonus for Edison.

We disagree. *General Telephone Co* held that the commission may not confiscate a utility's property nor can it suspend what would have been adequate rates until such time as certain facilities and improvements are provided. *General Telephone Co, supra,* pp 637-638. Such are not the facts in the instant case. The SAIP in no way suspends a commission order providing for increased rates.

We do not address the Attorney General's arguments concerning the structuring of rates and the policy advisability of the SAIP. It is axiomatic that

ratemaking is a legislative function. Legislative policy determinations by the commission, when properly made, are not reviewable by the courts. *Detroit Edison Co v Public Service Comm,* 82 Mich App 59, 67; 266 NW2d 665 (1978), and the cases cited therein. See, also, *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624, 644-645; 209 NW2d 210 (1973) (WILLIAMS, J., *dissenting* opinion).

Affirmed.