ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION #2

Docket No. 66596. Submitted February 7, 1984, at Lansing.—Decided August 7, 1984.

The Detroit Edison Company petitioned the Public Service Commission for an electric and steam heat rate increase. The commission approved an increase, including an automatic adjustment clause called the "Other Operations and Maintenance Expense Indexing System", a generating system availability incentive plan (SAIP) and a purchased and net interchange power adjustment clause to provide for virtually automatic rate adjustment to reflect changes in the cost of purchased power. The Attorney General and Detroit Edison each appealed to the Ingham Circuit Court. The appeals were consolidated and the court, Jack W. Warren, J., affirmed. The Attorney General appealed. *Held:*

1. The Public Service Commission has the statutory power to index rate adjustments for operation and maintenance expenses of public utilities.

2. The Public Service Commission can issue valid annual orders allowing electricity rate increases or decreases based on changes in the system availability without holding a full and complete hearing each year as is done in a main rate case when the single-factor hearing was anticipated and provided for in the principal rate case and order.

3. It is within the statutory authority of the Public Service Commission to provide, after notice and hearing, monthly purchased power adjustments in the rates charged by regulated electric utility companies.

4. What return a public utility shall be entitled to earn upon its invested capital and what items shall be considered as properly going to make up the sum total of that invested capital are questions of fact for the determination of the Public Service Commission, and its conclusions will not be set aside

REFERENCES FOR POINTS IN HEADNOTES
[1] 64 Am Jur 2d, Public Utilities §§ 176, 240.
[2, 3, 5] 64 Am Jur 2d, Public Utilities §§ 240 *et seq.,* 266 *et seq.*
[4] 64 Am Jur 2d, Public Utilities §§ 191, 286.

unless clearly unreasonable or unlawful. There was competent, material and substantial evidence on the record to support the commission's decision.

5. Determination of just and reasonable rates requires a determination of the reasonable costs of doing business and, in making that determination, the commission has discretion to determine what ratemaking formula to use. In adopting the formula used to determine Detroit Edison's working capital allowance, the commission was following accepted utility ratemaking practice and its own practice in prior cases. Further, the reason for the formula adopted was not improper.

Affirmed.

1. PUBLIC UTILITIES — RATE ADJUSTMENTS — INDEXING — CONSTITUTIONAL LAW.

The.Public Service Commission has the statutory power to index rate adjustments for operation and maintenance expenses of public utilities.

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATE ADJUSTMENTS — HEARINGS.

The Public Service Commission can issue valid annual orders allowing electricity rate increases or decreases based on changes in the system availability without holding a full and complete hearing each year as is done in a main rate case where the single-factor hearing was anticipated and provided for in the principal rate case and order.

3. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — ELECTRIC UTILITY COMPANIES — PURCHASED POWER ADJUSTMENTS.

It is within the statutory authority of the Public Service Commission to provide, after notice and hearing, monthly purchased power adjustments in the rates charged by regulated electric utility companies (MCL 460.6, 460.6a; MSA 22.13[6], 22.13[6a]).

4. PUBLIC UTILITIES — RATES — PUBLIC SERVICE COMMISSION — APPEAL.

What return a public utility shall be entitled to earn upon its invested capital, and what items shall be considered as properly going to make up the sum total of that invested capital, are questions of fact for the determination of the Public Service Commission, and its conclusions will not be set aside unless clearly unreasonable or unlawful.

5. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATEMAKING.

Public utility ratemaking is a legislative function which the

Legislature has delegated to the Michigan Public Service Commission with full discretionary authority to set just and reasonable rates; determination of just and reasonable rates requires a determination of the reasonable costs of doing business and, in making that determination, the commission has discretion to determine what ratemaking formula to use.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Anderson,* Assistant Attorney General, for plaintiff.

*A. Robert Pierce, Jr., Bruce R. Maters* and *David L. Clark,* for defendant.

Before: CYNAR, P.J., and J. H. GILLIS and R. C. ANDERSON,* JJ.

PER CURIAM. The Attorney General appeals as of right from an order of the Ingham County Circuit Court, which affirmed a Michigan Public Service Commission order granting The Detroit Edison Company an electric and steam heat increase in the amount of $83,792,000.

On July 20, 1977, Detroit Edison applied to the Public Service Commission for authority to increase its electric and miscellaneous service rates by $122,285,000 annually, Case No. U-5502. At the same time, Edison filed a motion for interim partial and immediate rate relief in the annual amount of $69,900,000.

On February 17, 1978, the commission issued its order allowing Edison interim relief in the amount of $35,415,000. See *Great Lakes Steel Division of National Steel Corp v Public Service Comm,* 416 Mich 166; 330 NW2d 380 (1982), *reh den* 417 Mich 1105 (1983). On September 28, 1978, the Public Service Commission entered its final order in the case. The Attorney General appealed to the Ing-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ham County Circuit Court by complaint for review pursuant to MCL 462.26; MSA 22.45. Detroit Edison also appealed and the appeals were consolidated. On August 18, 1982, Judge Jack W. Warren affirmed the Public Service Commission's final order.

The Attorney General's brief on appeal raises seven issues.

## I and II

In its final order, the commission adopted for the first time an automatic adjustment clause, called the "Other Operations and Maintenance Expense Indexing System" (O & M System). On appeal to circuit court, the Attorney General contended that the O & M System was unlawful because it exceeded the commission's statutory authority. Judge Warren refused to consider the contention because he concluded that the Attorney General did not raise this issue below.

We upheld the validity of the Other O & M System in *Attorney General v Public Service Comm #1,* 133 Mich App 719; 349 NW2d 539 (1984). In light of that decision, it is unnecessary to decide whether the Attorney General preserved the issue.

## III

In an earlier case, U-5108, the commission adopted a generating system availability incentive plan (SAIP) in a May 27, 1977, order. In this issue, the Attorney General objects to the plant availability incentive, arguing that Michigan law does not permit awarding or penalizing a utility for good or poor service. In addition, the Attorney

General argues that the incentive plan is an unlawful adjustment clause not authorized by statute.

Establishment of the SAIP is within the commission's statutory power, as we held in *Attorney General v Public Service Comm #2,* 133 Mich App 790; 350 NW2d 320 (1984).

## IV

In circuit court, the Attorney General objected to the incentive plan on a number of grounds, but Judge Warren refused to decide the points because he again found that the Attorney General had not preserved the issues for appeal. We recently reviewed this incentive plan in *Attorney General v Public Service Comm #2, supra,* and upheld it as being validly adopted. We see no reason to change our prior analysis of the question.

## V

The commission included in its rate order a purchased and net interchange power adjustment clause to provide for virtually automatic rate adjustments to reflect any changed costs of purchased power. The Attorney General maintains that the clause is unreasonable and unlawful.

The issue is controlled by a prior decision of this Court. In *Attorney General v Public Service Comm,* 122 Mich App 777; 333 NW2d 131 (1983), *lv den* 418 Mich 886 (1983), this Court held that the Public Service Commission had statutory authority to implement a purchased and net interchange power adjustment clause in Consumers Power Company's rate schedule.

## VI

The commission adopted a rate of return of 13.5%, which included a 10% addition to reflect new stock issuance costs and downward pressure on the market price of the company's common stock. The Attorney General argues that the commission's rate of return decision is not supported by competent, material and substantial evidence on the whole record and is not supported by sufficient findings and conclusions to make the commission's decision susceptible of review.

The rate of return a public utility should be allowed to earn upon its invested capital is a question of fact for determination by the commission and the commission's determination will not be set aside on appeal unless it is clearly unreasonable or unlawful. *Michigan Bell Telephone Co v Public Service Comm,* 332 Mich 7; 50 NW2d 826 (1952); *Attorney General v Public Service Comm,* 118 Mich App 311; 324 NW2d 628 (1982), *lv den* 417 Mich 1003 (1983). In the former case, the Court said:

"On matters involving the exercise of good common sense and judgment only, the determination of the commission must be held to be final unless such determination in its application results in the establishment by 'clear and convincing' proof of a rate so low as to be confiscatory or so high as to be oppressive. What return a public utility shall be entitled to earn upon its invested capital, and what items shall be considered as properly going to make up the sum total of that invested capital, are questions of fact for the determination of the commission, and their conclusions thereon, upon which the rate is based, are unassailable unless, as a necessary result, it can be affirmatively asserted that the resultant rate is unreasonable and unlawful."

332 Mich 26 (quoting from *City of Detroit v Michigan Railroad Comm,* 209 Mich 395, 433; 177 NW 306 [1920]).

The commission has broad discretion to decide facts, including what is a reasonable rate of return. *The Detroit Edison Co v Public Service Comm,* 127 Mich App 499; 342 NW2d 273 (1983), *lv den* 419 Mich 874 (1984); *Attorney General v Public Service Comm, supra,* 118 Mich App 311, 315-316.

The Attorney General's main complaint about the figure set by the commission is that the commission enhanced its rate of return estimate by 10% to account for costs of issuance of new securities and market pressure. Yet, the Attorney General's argument overlooks the fact that staff witness Thomas Cooper testified to two, out of four, methods of determining rate of return which did not involve the 10% addition and yet both showed a return on common equity between 13.85% and 14%.

The Attorney General's argument also overlooks the fact that the commission, within its discretion, decided to set the rate of return percentage at the high side of testimony because of "special problems" the utility faced. Further, the commission's opinion explains why it chose the testimony of witness Cooper over the testimony, say, of Attorney General witness Dr. John W. Wilson. Finally, the commission followed its own past practice in *In re Consumers Power Co,* Case No. U-5331, in adjusting the rate of return for market pressure and issuance costs by 5 to 10%. Contrary to the Attorney General's contention, there is competent, material and substantial evidence in the record to support the commission's decision to increase the rate of return by 10% to reflect market pressure and issuance costs for new securities.

## VII

The commission determined the company's rate base to be $124,747,000 by combining net utility plant with a formula-determined working capital allowance. The Attorney General advocates adoption of a capital structure or investment rate base, based on the average amount of investor-supplied capital to be utilized for working capital purposes. According to the Attorney General, that figure would be $7,367,000 for the test year 1978.

There was no error. In adopting the 45-day formula for establishing Edison's working capital allowance, the commission was simply following accepted utility ratemaking practice and its own practice in past cases. Welch, *Cases and Test on Public Utility Regulation* (Rev ed, 1968), explains the concept of working capital and the reason why the 45-day formula is used.

"In addition to the 'bare bones' or physical structure of the utility property devoted to the public service, a certain amount is added to such value or investment, for rate making, to take care of working capital. This has been defined by the Oklahoma Corporation Commission as the amount of cash and materials and supplies required in the day-to-day operation of the utility business to meet current expenses and such contingencies as may ordinarily develop. Re Western Light & Teleph. Co. (1957) 17 PUR3d 422.

"For an analogy one might consider a large newly constructed department store, all ready to operate except that it still does not have a day's cash supply in the cash registers nor retail stocks (materials and supplies) on its shelf. Obviously, the cost of both of these items is just as much a part of the cost of doing business as the structure of the store. What is more, if the store is to operate on a monthly credit basis, it will need enough cash and supplies to keep operating for at least a month and a half until its first monthly state-

ments go out and the customer payment checks start to come back.

"A month and a half—forty-five days—is frequently used as the basic test of working capital requirements for utilities, such as gas, electric, and telephone companies which commonly bill on a monthly basis." Welch, *supra,* pp 377-378.

The commission had discretion to employ the 45-day formula for determining the working capital allowance. It was not obligated to adopt the Attorney General's proposed actual investment rate base. Ratemaking is a legislative function. The Legislature has delegated to the Public Service Commission discretionary authority to set just and reasonable rates. *The Detroit Edison Co v Public Service Comm, supra,* 127 Mich App 499, 524. In setting rates, the commission is not bound by any single ratemaking formula.

Nor did the commission give an improper reason for adhering to the 45-day formula. The Attorney General says the commission adhered to that formula because Detroit Edison had not recently realized its authorized rate of return on common equity. But, the Attorney General objects, that reasoning in effect reimburses the utility for past unrealized profits, contrary to the recognized principle that the commission cannot set rates retroactively. The point is not meritorious. The commission said what it did in answer to the Attorney General's contention that the company's rate of return on common equity would be in excess of 15% if the commission adhered to the 45-day formula.

Finally, the commission satisfies us that it did not reject the 45-day formula in Consumers Power Company's gas rate case, U-4717.

Affirmed.