PENNWALT CORPORATION v PUBLIC SERVICE COMMISSION

Docket No. 88747. Submitted October 17, 1986, at Lansing. Decided January 20, 1987. Leave to appeal applied for.

The Detroit Edison Company, seeking an increase in its industrial steam and electric service rates, filed two separate petitions with the Public Service Commission. One petition dealt strictly with rates charged to Pennwalt Corporation and the other petition dealt with Edison's other customers. An issue before the commission concerned whether income tax consequences should be allocated between the two sets of customers according to taxable income or according to pre-tax operating income. The commission adopted the pre-tax operating income allocation method in approving rate increases which were lower than requested. Pennwalt sought review in the Ingham Circuit Court. The circuit court, Ray C. Hotchkiss, J., ruled that subsequent rate increases rendered Pennwalt's appeal moot because no remedy was available. On appeal to the Court of Appeals, the Court reversed and remanded, holding that a remedy existed in that the circuit court could have ordered the refund of excess payments. 109 Mich App 542 (1981). On remand, the circuit court found that the income tax allocation method adopted by the commission was arbitrary, capricious and unlawful. The circuit court instructed the commission to reconsider its income tax allocation method. The commission reversed itself, determining that the pre-tax operating income allocation method was less precise than the method based on taxable income. The circuit court, Carolyn Stell, J., affirmed that determination and ordered a refund in an amount to be determined by the commission. Detroit Edison appealed.

The Court of Appeals *held:*

1. A procedurally defective rate increase is subject to refund only if it is subsequently determined that the actual rates charged pursuant thereto were unreasonable.

2. It is the result reached, and not the method employed, which is controlling when determining whether a rate increase

REFERENCES

Am Jur 2d, Public Utilities §§ 276-285.

See the annotations in the Index to Annotations under Utilities.

is "just and reasonable." If the total effect of the rate increase cannot be said to be unjust and unreasonable, judicial inquiry is at an end.

3. In this case, the circuit court erred by focusing solely on the propriety of the methodology employed and failing to address the crucial question of whether the overall rates were unreasonable or unlawful.

4. The party seeking a refund bears the burden of establishing that a rate increase is unreasonable or unlawful. In this case, Pennwalt failed to demonstrate that the overall rates were unlawful or unreasonable.

Reversed, and summary disposition entered in favor of Detroit Edison.

1. PUBLIC UTILITIES — RATE INCREASES — PUBLIC SERVICE COMMISSION — REFUNDS — APPEAL.

A rate increase approved by the Public Service Commission, where it is alleged that procedures employed in determining the rate of increase were defective, is subject to refund only if it is subsequently determined that the actual rates charged pursuant thereto were unreasonable; under the standard of "just and reasonable" it is the result reached, not the method employed, which is controlling; if the total effect of the rate increase cannot be said to be unjust and unreasonable, judicial inquiry is at an end.

2. PUBLIC UTILITIES — RATE INCREASES — REFUNDS.

The party seeking a refund of a public utility's rate increase bears the burden of establishing that a rate increase is unreasonable or unlawful (MCL 462.26[e]; MSA 22.45[e]).

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Peter S. Sheldon* and *Jeffery V. Stuckey*), for Pennwalt Corporation.

*A. Robert Pierce, Jr.,* and *David L. Clark,* and *Fischer, Franklin, Ford, Simon & Hogg* (by *George Hogg, Jr., Philip E. Chaffee,* and *Sidney M. Berman*), for the Detroit Edison Company.

Before: DANHOF, C.J., and BRONSON and T. GILLESPIE,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. The Detroit Edison Company appeals from an October 30, 1985, order of the Ingham Circuit Court, reversing a 1976 rate-making determination by the Michigan Public Service Commission involving Pennwalt Corporation. The circuit court found that Pennwalt was entitled to a refund because the commission had used an improper methodology to compute Pennwalt's steam and electrical service rates. The court remanded the case to the commission with the instruction that the commission compute the 1976 rates utilizing the proper methodology, calculate the amount overcharged, and effect the refund. From that order, Edison appeals.

Edison argues that even if an improper methodology was used in 1976 a refund is not required unless Pennwalt demonstrates that the overall rate was unreasonable or unlawful. Edison asserts that in a subsequent rate case Pennwalt's own expert witness conceded that Edison would have suffered an annual revenue deficiency of at least $500,000 for 1975 even after accounting for the rates established in 1976. We reverse the decision of the circuit court and hold that Pennwalt is not entitled to a refund.

In 1964, the Detroit Edison Company purchased Pennwalt's in-house steam generating equipment and entered into a twenty-five-year lease for the land on which the equipment was situated. The lease provided that the equipment was to be operated in situ with rates to be determined and regulated by the commission.

When Edison sought an increase in its industrial steam and electric service rates in 1975, it filed two separate petitions with the commission. One petition, U-4741, the subject of the instant appeal, dealt strictly with rates for Pennwalt. The second

petition dealt with steam and electrical rates for all other Edison customers.

In both cases, there was a question of whether income tax consequences should be allocated between the two sets of customers according to taxable income or according to pre-tax operating income. The commission ultimately adopted the pre-tax operating income allocation method. From that determination, Pennwalt appealed.

In the circuit court, Edison argued that subsequent rate increases rendered the appeal moot because no remedy was available. The circuit court agreed and granted summary judgment. On appeal to this Court, we reversed, holding that a remedy existed in that the circuit court could have ordered the refund of excess payments. 109 Mich App 542; 311 NW2d 423 (1981).

On remand, the circuit court permitted additional evidence to be introduced regarding the propriety of the income tax allocation method adopted by the commission. Finding a reason to believe that the method adopted was arbitrary and capricious and hence unlawful, the circuit court, pursuant to MCL 462.26(c); MSA 22.45(c), transmitted the additional evidence to the commission with instructions that it reconsider its income tax allocation methodology.

The commission reviewed the additional evidence and on November 18, 1984, issued an opinion. In that opinion, the commission reversed itself and determined that the methodology based on pre-tax income which it had previously adopted was less precise than the methodology based upon taxable income. The commission concluded its opinion as follows:

Reallocating income taxes to reflect that change [in methodology] would result in a revenue defi-

ciency lower than computed in the prior order. The amount of the reduction was not briefed by the parties and is not readily apparent from the record. The Commission therefore expresses no opinion on that subject.

In concluding that a reduction in the revenue deficiency is supported by the additional evidence, the Commission does *not* also conclude that the rates set on July 26, 1976 were unreasonable. As Detroit Edison argues, when the Commission issued its order on July 26, 1976 then current conditions already justified a further rate increase. That increase, of course, could not be put into place until the record in Pennwalt's next rate case was closed and the Commission issued an order. The Commission believes it is for the courts to determine whether Detroit Edison's argument should prevent a refund to Pennwalt. The Commission mentions this point only to make clear that the Commission has not found the rates set on July 26, 1976 to be unreasonable.

On review of the commission's decision as modified by its 1984 opinion, the circuit court affirmed the determination that an improper methodology had been utilized. On that basis, the court reasoned that the rates which Pennwalt had paid during the eighteen-month period U-4741 had been in effect were unreasonable or unlawful and ordered a refund, the amount of which was to be determined by the commission. From that order, Edison appeals.

In *Building Owners & Managers Ass'n of Metropolitan Detroit v Public Service Comm,* 424 Mich 494, 509; 383 NW2d 72 (1986), our Supreme Court held that a procedurally defective rate increase is subject to refund only if it is subsequently determined that the actual rates charged pursuant thereto were unreasonable. In reaching its decision, the Court relied in part upon federal author-

ity and quoted at length from *Federal Power Comm v Hope Natural Gas Co,* 320 US 591; 64 S Ct 281; 88 L Ed 333 (1944), in which the utility sought to have the Court invalidate a rate ordered by the FPC because of technical errors:

> "*Under the statutory standard of 'just and reasonable' it is the result reached not the method employed which is controlling.* Cf. *Los Angeles Gas & E Corp v Railroad Comm,* 289 US 287, 304-305, 314 [53 S Ct 637; 72 L Ed 1180 (1933)]; *West Ohio Gas Co v Public Utilities Comm,* 294 US 63, 70 [55 S Ct 316; 79 L Ed 761 (1935)]; *West v Chesapeake & P Tel Co,* 295 US 662, 692-693 [55 S Ct 894; 79 L Ed 1640 (1935)] (dissenting opinion). It is not theory but the impact of the rate order which counts. *If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important.* Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. Cf. *Railroad Comm v Cumberland Tel & T Co,* 212 US 414 [29 S Ct 357; 53 L Ed 577 (1909)]; *Lindheimer v Illinois Bell Tel Co,* [292 US 151, 164, 169; 54 S Ct 658; 78 L Ed 1182 (1933)]; *Railroad Comm v Pacific Gas & E Co,* 302 US 388, 401 [58 S Ct 334; 82 L Ed 319 (1938)].
>
> "The rate-making process under the Act, *i.e.,* the fixing of 'just and reasonable' rates, involves a balancing of the investor and the consumer interests. Thus we stated in the Natural Gas Pipeline Co. case that 'regulation does not insure that the business shall produce net revenues.' [*Federal Power Comm v Natural Gas Pipeline Co*] 315 US [575] 590 [62 S Ct 736; 86 L Ed 1052 (1942)]. But

such considerations aside, the investor interest has a legitimate concern with the financial integrity of the company whose rates are being regulated. From the investor or company point of view it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business." [320 US 602-603. Emphasis added. 424 Mich 510-511.]

See also, *Northern Michigan Water Co v Public Service Comm,* 381 Mich 340; 161 NW2d 584 (1968), *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973).

In the instant case, the circuit court erred by focusing solely on the propriety of the methodology employed. The crucial question is not whether the *methodology* was unreasonable, but whether the *overall rates* were unreasonable or unlawful. *Building Owners Ass'n, supra.* It is the burden of the party seeking a refund to establish that the established rates are unreasonable or unlawful. MCL 462.26(e); MSA 22.45(e); *Building Owners Ass'n, supra.*

In the instant case, Pennwalt has only demonstrated that one of the variables in the income tax allocation methodology was improper. This factor was only one of several factors which were considered in establishing the overall rates. During the eighteen months that U-4741 was in effect, Pennwalt paid approximately $11.6 million for steam and electrical energy to Edison.[1] In the subsequent rate case between the parties, U-5218, Pennwalt's own expert witness conceded that Edison was incurring an annual revenue deficiency of approximately $500,000 as a result of the rates estab-

---

[1] Pennwalt asserts that if the proper methodology had been used its rates would have been $1.9 million lower during the period of time U-4741 was in effect.

lished in U-4741. This testimony was based on Edison's operating experience with 1975 as the test year. This period ended seven months before the rates set in U-4741 went into effect.[2] From the above, we conclude that Pennwalt has failed to demonstrate that the overall rates were unlawful or unreasonable.

In so holding, we do not invade the fact-finding province of the commission. *Detroit Edison Co v MPSC,* 155 Mich App 461; 400 NW2d 644 (1986). As previously quoted, the commission concluded its most recent opinion by stating:

> In concluding that a reduction in the revenue deficiency is supported by the additional evidence, the Commission does *not* also conclude that the rates set on July 26, 1976 were unreasonable. As Detroit Edison argues, when the Commission issued its order on July 26, 1976, then current conditions already justified a further rate increase.

The circuit court read the above passage as not being a finding of unreasonableness *or reasonableness.* If the first quoted sentence stood alone, we would agree. However, when read in light of the second sentence, the above passage is a finding that the rates established in 1976 were reasonable.[3]

In light of our resolution, the other issues raised by the parties need not be addressed.

[2] The commission ultimately found in U-5218 that the revenue deficiency for the 1975 test year was $1,480,000.

[3] By so holding, we do not decide the overall rates may never be shown to be unreasonable by demonstrating that an improper methodology was used to determine one of the component factors. If the methodology results in a substantial overpayment in regard to that one factor, there may be situations where it could be inferred that the overall rate was unreasonable. However, even if we were to assume in the instant case that Pennwalt fulfilled its burden of proof, a contrary result is not required. Edison's convincing proofs amply rebutted Pennwalt's proofs and supported the commission's finding that the 1976 rates were reasonable.

The order of the circuit court is reversed and an order of summary disposition in Detroit Edison's favor is hereby entered.

BRONSON, J., did not participate.