CITY OF NOVI v CITY OF DETROIT

Docket No. 96203. Submitted November 10, 1987, at Detroit. Decided
February 16, 1988. Leave to appeal applied for.

In 1964 the City of Novi entered into a contract with the City of
Detroit for the purchase of water at rates "reasonable in
relation to the costs incurred" for supplying the water. Among
the factors considered in determining the rate are the elevation
differential and distance from the water source. Although the
City of Detroit supplies water to only half of the City of Novi, it
calculates the rate by considering the entire geographic area of
the City of Novi. The City of Novi brought an action in the
Oakland Circuit Court against the City of Detroit challenging
this practice. The court, Francis X. O'Brien, J., entered a
judgment of no cause of action. Plaintiff appealed.

The Court of Appeals *held:*

The statute granting authority to cities to contract for water
sales to other municipalities requires that the price charged be
based on the actual cost of service. The practice of considering
the entire geographic area of the purchasing city rather than
just the geographic area serviced in determining water rates
violated the statutory mandate. Plaintiff is entitled to a refund
of the overcharge.

Reversed.

HOOD, P.J., concurred in the analysis but wrote separately to
note that it was not clear from the record whether the City of
Detroit made a change in the wholesale or retail rate charged
for water after July 1, 1982, the effective date of the amend-
ment containing the statutory language in question. The
amendment provides that the new language is applicable upon
the first change in the rates.

PUBLIC UTILITIES — MUNICIPALITIES — WATER.

The statute authorizing a municipality to contract for the sale of

REFERENCES

Am Jur 2d, Public Utilities § 120.

Am Jur 2d, Waterworks and Water Companies §§ 1 *et seq.*

Discrimination between property within and that outside munici-
pality or other governmental district as to public service or
utility rates. 4 ALR2d 595.

water to other municipalities requires that the price charged be based on the actual cost of service (MCL 123.141; MSA 5.2581).

*Fried & Levitt, P.C.* (by *David M. Fried* and *Dennis Watson*), for plaintiff.

*Donald Pailen,* Corporation Counsel, and *Robert Walter,* Assistant Corporation Counsel, for defendant.

Before: HOOD, P.J., and R. M. MAHER and J. B. SULLIVAN, JJ.

R. M. MAHER, J. This appeal as of right concerns the validity of the water rates charged to plaintiff as a customer of defendant's water and sewerage department. At the bench trial on the matter, the trial court entered a judgment of no cause of action, finding that plaintiff had not adequately shown that the water rates charged by defendant were unreasonable or contrary to the actual costs incurred. We reverse.

Plaintiff is one of approximately one hundred communities which purchase water from defendant. The parties entered into a contract in 1964 for the sale and delivery of water. By its terms, the contract is to last for a minimum of thirty-five years and provides that the "rates shall always be reasonable in relation to the costs incurred by [defendant] for the supply of water." In calculating the rates charged to wholesale water customers, such as plaintiff, defendant employs a ratemaking formula which considers thirteen different cost factors. Two of the factors are (1) the distance between the customer and the water source, and (2) the elevation differential between the same. Those two factors are calculated according to the following methodology:

The distance parameter is equal to the average
of five straight line distances drawn between a
customer's single meter connection or geographic
center (where there is more than one meter con-
nection) and each of the DWSD's [Detroit Water and
Sewerage Department's] five water treatment facil-
ities. The elevation parameter is equal to the
average of five differentials in elevation estab-
lished between a customer's single meter connec-
tion or *average service area* elevation and the
DWSD's five water treatment facilities. [Emphasis
added.]

In applying that methodology to water customers
with multiple meter connections, defendant has
since 1961 computed the distance and elevation
factors based on the average values of the entire
geographic area of the customer community.

Plaintiff does not challenge the ratemaking for-
mula itself, but rather the application of that
formula. Specifically, plaintiff asserts that the dis-
tance and elevation factors must be calculated
according to the "average service area" of the city,
not the entire geographic area. Plaintiff maintains
that its average service area is only the eastern
one-half of the city. Defendant concedes this but
insists that the water rates are still valid because
they are reasonably related to the actual costs of
providing the water.[1]

Measuring the distance and elevation factors
from the eastern one-half of plaintiff's land area,

[1] It should also be pointed out that defendant does not argue that
its rates were permissible under the terms of the parties' 1964
contract. This is significant because the relevant statute, MCL
123.141(2); MSA 5.2581(2), states, in pertinent part, that "[t]his sub-
section shall take effect with the first change in wholesale or retail
rate by the city or its contractual customers following the effective
date of this subsection [i.e., July 2, 1981]." Because defendant does not
claim that there has not yet been a change in water rights, we decline
to advance that argument for it. In any case, in light of defendant's
concessions, it seems clear that the statute was in effect during the
rate years in dispute.

defendant should be using a distance value of thirty miles and an elevation value of 873.31 feet. The actual values used by defendant are thirty-two miles in distance and 910 feet in elevation. Using the former values as the proper measure, plaintiff was overcharged $40,010.85 for the 1983-84 rate year and $38,824 for the 1984-85 rate year. The total overcharge for the 1985-86 rate year was unavailable at the time of trial, although it was anticipated that the unit overcharge would be forty-eight cents per thousand cubic feet of water. We believe the water rates charged by defendant were not proper and, therefore, plaintiff is entitled to a refund of the aforementioned overcharges.

Before discussing the reasons for our decision, we note that municipal corporations are empowered to sell and deliver water outside their corporate limits. Const 1963, art 7, § 24. Further, we acknowledge that ratemaking is a legislative function, not a judicial one. *The Detroit Edison Co v Public Service Comm,* 82 Mich App 59, 67; 266 NW2d 665 (1978), aff'd 416 Mich 510; 331 NW2d 159 (1982), reh den 417 Mich 1133 (1983). The ratemaking authority for a municipal utility is reserved to the legislative body given that power under the municipal charter. MCL 141.103(d), 141.121; MSA 5.2733(d), 5.2751. Utility ratemaking and the cost of service allocation are not exact sciences. *Mars Hill & Blaine Water Co v Public Utilities Comm,* 397 A2d 570, 587 (Me, 1979); *New England Telephone & Telegraph Co v State,* 113 NH 92; 302 A2d 814 (1973). A ratemaking authority is not bound by any single ratemaking formula. *City of Plymouth v Detroit,* 423 Mich 106, 126-133; 377 NW2d 689 (1985); *Attorney General v Public Service Comm #2,* 136 Mich App 515, 523; 358 NW2d 351 (1984). The mere fact that one method of ratemaking is deemed reasonable does not make

all other alternative methods of setting a rate unreasonable. *Public Service Co of Colorado v Public Utilities Comm,* 653 P2d 1117, 1120 (Colo, 1982). While it is not our function to determine what a particular rate should be, it is our duty to review the rate imposed to determine if it complies with the statutory requirements.

Defendant derives its authority to contract with other municipalities for the sale of water from MCL 123.141(1); MSA 5.2581(1). Subsection (2) of that statute further provides that "[t]he price charged by the city to its customers shall be at a rate which is based on the *actual cost of service* as determined under the utility basis of ratemaking." (Emphasis added.) MCL 123.141(2); MSA 5.2581(2). That language represents a departure from the former statutory language which directed only that the water rate, in cases such as this, "shall bear a reasonable relationship to the service rendered." 1957 PA 53 (repealed in 1981). Hence, no longer can the water rate be merely reasonably related to the service rendered but must reflect the actual cost of providing the service. By amending the statutory language in that manner, we must assume the Legislature intended to effectuate some change in the application of the statute. *Borkus v Michigan National Bank,* 117 Mich App 662, 668; 324 NW2d 123 (1982), lv den 417 Mich 998 (1983). Logically, this would be to impose a stricter standard upon municipal corporations in establishing the water rates charged to their utility customers. Indeed, this fact is borne out by the argument for the house bill from which the new statute originated, HB 4029:

> The present rate-making limitations result in obvious inequities. Thirty-four of Detroit's water service customers pay more than the actual cost of

service while ten pay less. In effect the thirty-four overcharged customers are subsidizing the cost of water service to the ten undercharged customers. The City of Detroit alone will benefit this year in the amount of $3.4 million. The other undercharged customers will pay almost $1.4 million less than their actual cost of service. Thus, the thirty-four overcharged customers will be paying a total of $4.8 million this fiscal year to help provide service to undercharged customers. Now that the Detroit water system has at its disposal a reliable method of equitably apportioning costs there is no reason why water service customers should not pay the actual cost of service. [House Legislative Analysis, HB 4029, March 9, 1981.]

On the basis of the new statutory language of MCL 123.141(2); MSA 5.2581(2), we believe the water rates charged to plaintiff were improper.

Defendant insists that its water rates are valid based on the decisions in *Building Owners & Managers Ass'n of Metropolitan Detroit v Public Service Comm,* 424 Mich 494, 509; 383 NW2d 72 (1986), and *Pennwalt Corp v Public Service Comm,* 157 Mich App 273, 279; 403 NW2d 121 (1987), lv den 428 Mich 905 (1987). In *Pennwalt Corp,* it was held that "[t]he crucial question is not whether the *methodology* was unreasonable, but whether the *overall rates* were unreasonable or unlawful." (Emphasis in original.) 157 Mich App 279. Using that logic then, defendant argues that, even though its water rates were not calculated according to the actual area served alone, they are still valid because plaintiff has not shown them to be unreasonable or unlawful. We find *Building Owners Ass'n* and *Pennwalt Corp* to be distinguishable from the instant case.

Both *Building Owners Ass'n* and *Pennwalt Corp* interpreted a different statute than the one in dispute herein. That statute, MCL 462.26(e); MSA

22.45(e), now MCL 462.26(8); MSA 22.45(8), expressly provided that "the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable." Here, the statute in question does not delineate the applicable burden of proof. However, several early cases which interpreted the former statutory language held that, unless the plaintiff can show that the water rates are arbitrary, capricious or unreasonable, the charge is valid despite a defect in calculating the rates. *City of Plymouth, supra,* p 134; *Meridian Twp v East Lansing,* 342 Mich 734, 746-753; 71 NW2d 234 (1955). Considering the significant change in the new statutory language, we believe that interpretation is no longer viable.

Under the current statutory scheme, it is enough for the challenging party to show that the water rates do not reflect the actual cost of providing the service. In so ruling, though, we do not mean to hold municipal corporations accountable for every penny charged to their water service customers. Because ratemaking is not an exact science, mathematical precision cannot be required. However, as recognized in the argument for House Bill 4029, municipal corporations now have at their disposal a reliable method for apportioning costs. While perhaps not exact, that method must certainly provide greater precision and guidance to municipal corporations than formerly available. It makes little sense then to adhere to a standard of review which was developed at a time when calculating the actual cost of water was neither possible nor required.

Although we speak in terms of a single "method" of rate calculation, we recognize that it is entirely possible for several formulas—each of which considers different factors or applies them

in a different way—to yield a sum which constitutes the actual cost of service. However, in the instant case, the parties stipulated at trial that the rate methodology for calculating the distance and elevation factors represented the utility basis of ratemaking. That stipulation, which was received and approved by the court, became binding upon the parties. *Dana Corp v Employment Security Comm*, 371 Mich 107, 110; 123 NW2d 277 (1963). Moreover, defendant's expert witness acknowledged, upon questioning by the court, that the "average service area" of plaintiff includes only the eastern portion of the city which is actually being served by defendant.[2] It would be anomalous to hold that defendant's water rates are valid despite the fact that they are contrary to the methodology which defendant is bound to follow. Clearly, the water rates charged by defendant cannot be said to reflect the actual cost of providing the water. Thus, plaintiff is entitled to a refund of the water rate overcharges for the years 1983-84, 1984-85, and 1985-86.

Reversed.

HOOD, P.J. *(concurring)*. I concur in Judge MAHER's analysis. I write separately only because it is not clear to me from the record before us that the City of Detroit made a change in the wholesale or retail rate following the July 1, 1982, effective date of the amendment to MCL 123.141; MSA 5.2581.

---

[2] Although the rate methodology for calculating the distance factor does not explicitly require its calculation according to its average service area, we believe such is implicit. That factor talks of measuring the straight line distance from the single meter connection (where applicable), not from the center of the entire city limits. And, although the methodology refers to the "geographic center" in the case of multiple meter connections, we believe that reference is to the area actually served. Because the methodology speaks of specific points within the service area, and not the city limits of the customer community as a whole, it logically follows that the distance factor is also to be calculated according to the average service area.

Neither parties' brief nor the stipulation of facts address this point. The clear language of the amendatory act provides that "[t]his subsection shall take effect with the first change in wholesale or retail rate by the city or its contractual customers following the effective date of this subsection." If, in fact, there were no rate changes during the years in question, the amendatory language did not apply and the rate charged plaintiff was proper.