## BAURA *v.* THOMASMA.

1. STATUTES—DICTIONARY DEFINITIONS OF SYNONYMOUS WORDS.
   Dictionary definitions of apparently synonymous words must give way to the action of a legislative body in making separate classifications.

2. MUNICIPAL CORPORATIONS — ORDINANCES — SLAUGHTERHOUSES — ABATTOIRS.
   Under municipal zoning and abattoir ordinances, a structure to be used for slaughter of animals exclusively by its owner for his own purposes is considered a "slaughterhouse" and not an "abattoir."

3. SAME—ZONING ORDINANCES—NOTICE OF HEARING.
   Requirement that notice be given to owners of record of property within 300 feet of premises as to use of which a question is raised for municipal board of zoning appeals applies not only to notice of hearing on appeals but also to notice of hearing in original proceeding (1 Comp. Laws 1929, § 2637, subds. [a, d], as amended by Act No. 306, Pub. Acts 1941).

4. SAME—ZONING ORDINANCE—PUBLISHED NOTICE OF HEARING— TIME.
   Published notice of hearing in proceeding relative to use of property subject to municipal zoning ordinance did not comply with requirements of ordinance where the time of hearing was not stated therein.

REFERENCES FOR POINTS IN HEADNOTES
[2] 58 Am. Jur., Zoning, §§ 12, 110.
[3–5] 58 Am. Jur., Zoning, §§ 10, 221.
[7] 58 Am. Jur., Zoning, §§ 188, 247, 255.

5. SAME—ZONING ORDINANCE—NOTICE OF HEARING—TIME—PERMIT.

Permit granted by board of zoning appeals for use of property for slaughterhouse purposes *held*, void, where published notice of public hearing on property owners' petitions failed to designate the hour of hearing.

6. SAME—ZONING ORDINANCE—SLAUGHTERHOUSES—RENDERING—JURISDICTION OF APPEAL BOARD.

Where original application for permit for use of premises for slaughterhouse purposes stated proposed building would be 15' x 40' and would not be used for rendering, the municipal board of zoning appeals was without jurisdiction to grant permit for use as slaughterhouse where building would be 101' x 178' in which rendering operations will be carried on.

7. INJUNCTION—LACHES—ESTOPPEL—JURISDICTION—DE NOVO ACTION BEFORE BOARD OF ZONING APPEALS.

Where municipal board of zoning appeals did not have jurisdiction to grant permit to defendants to use their property for slaughterhouse purposes under application made, fact that plaintiffs, nearby property owners, may be guilty of laches and estoppel would not prevent issuance of injunction without prejudice to defendants' right to institute a *de novo* action before the board.

Appeal from Kent; Souter (Dale), J. Submitted April 7, 1948. (Docket No. 14, Calendar No. 43,921.) Decided May 18, 1948.

Bill by John J. Baura and others against Thomas R. Thomasma and others, doing business as Thomasma Brothers, to enjoin the erection of a building for a slaughterhouse. Decree allowing the erection of building described in original petition filed with the board of zoning appeals, but enjoining erection of larger bulding. Plaintiffs appeal. Defendants cross-appeal. Reversed and decree entered for plaintiffs in accordance with opinion.

*L. H. Grettenberger*, for plaintiffs.

*Merle C. Baker* and *Warner, Norcross & Judd*, for defendant.

BUSHNELL, C. J.   Defendants Thomasma Brothers have been engaged in a wholesale meat business in the city of Grand Rapids since 1916, which was started by their parents in 1885. They have two plants, in which they slaughter animals, process and pack meats. In December of 1942 they secured an option on about four acres of land on Turner avenue, near the outskirts of the city in a commercial zone designated as an "E" industrial district, where the premises may be used for any purpose not in conflict with the ordinances of the city. Under the Grand Rapids zoning ordinance an application to the zoning board of appeals is required if the proposed use in an "E" zone is any one of the 16 named therein. Among these listed uses are: 1. Abattoir, and 14. Stockyards or slaughter of animals.

In accordance with this ordinance, defendants, on December 24, 1942, filed an application with the board of zoning appeals for permission to use the premises known as 1924 Turner avenue, N.W., for "storage and slaughtering of animals for own use." In accordance with plans attached thereto, the size of the proposed building was given as 15 feet wide, 40 feet long, 12 feet high. The following statement was included in the application:

"The location of the premises is on the east side of Turner with a northern extremity as the city limits; to the south and rear is the city dump; to the immediate west is vacant property, manufacturing, including petroleum refining. There are only two houses in the block across the street, and approximately 400 ft. away. The use will be strictly for killing for own use and is essential because of necessity for supplying meat in this area. There will be no offensive odors because the offal will be immediately carried away and there will be no rendering."

Upon the receipt of this application, according to the testimony of the secretary of the zoning board of appeals, post-card notices were sent to property owners within a radius of 300 feet, stating that the board would meet on January 15, 1943, at 1 o'clock for the purpose of considering the Thomasma application. In addition to mailing the post cards, a notice required by the ordinance was published in the Grand Rapids Herald on December 30 and 31, 1942, and January 4, 1943, to the same effect, but without a designation therein of the hour of meeting. It should be noted here that plaintiffs, who are property owners in the vicinity of the land in question, insist that the post-card notices were not sent to all property owners within 300 feet.

The minutes of the board of zoning appeals disclose that at the hearing on January 15, 1943, certain interested parties were in attendance, and the attorney for Thomasma Brothers stated that his clients proposed to spend from $25,000 to $35,000 in the improvement of the property, and that, according to the testimony of a Doctor Meyer, the operation of the proposed improvements would not be obnoxious. A representative of the State land board and another property owner, who were present, made no objections. Plaintiff Fred Marger, who lives in his own home at 1905 Turner, however, did object. Defendants' application was approved by a vote of 5 to 1. The minutes of the board are silent as to protests by others but, according to the testimony of one Helen Sears, the daughter of Michael Siratowicz, who owned the property at 1901 Turner, a petition, signed by some 26 parties, had been filed the day before the hearing, in opposition to the application.

On or about March 24, 1943, another petition, signed by 11 property owners, was filed with the zoning board. These petitioners claimed that the application of Thomasma Brothers was "misleading, deceptive and false;" that the notices of the hearing were misleading and insufficient, and that the findings and determination of the board were void because of noncompliance with the zoning ordinance. They asked that the matter be reopened and the permit vacated. On March 26th, after an answer had been filed by Thomasma Brothers, this petition for reconsideration was denied.

Subsequent to these events, defendants exercised their option on the property, expended considerable sums in improving the same, but because of war shortages were unable to proceed with their building operations. On December 13, 1945, defendants secured a building permit from the building inspector's office of the department of public safety, for the erection of a "slaughterhouse 1 story 101′ x 178′ brick-steel-concrete" construction at an estimated cost of $100,000. A few days later plaintiffs' bill of complaint to enjoin the construction of the proposed slaughtering plant was filed.

On the issues framed by the bill and its answer, trial was had at which considerable testimony was presented. The trial judge filed a written opinion and held that defendants should be enjoined from proceeding with the erection of the larger building described in the building permit, but that they should be allowed to use the premises in accordance with the application that was approved by the board of zoning appeals, *i.e.*, for a building costing not to exceed $35,000, of the size described therein, as a slaughterhouse and for the storage of animals. From the decree entered in accordance with the opinion both sides have appealed.

Plaintiffs contend that defendants propose to construct an abattoir, and therefore are required to comply with the ordinance of the city of Grand Rapids regulating the construction and operation of abattoirs.

Defendants conceded that if the structure is an abattoir, they are governed by this ordinance which requires the consent in writing of at least 75 per cent. of the property owners within the radius of one mile, and that in such event plaintiffs are entitled to relief. Defendants, however, contend that the abattoir ordinance is not applicable to the construction and operation of slaughterhouses, that the board had jurisdiction, that permission was validly granted, and that the trial court is without power to go behind the action of the board and impose limitations upon the cost of the building to be erected.

Considerable stress is placed upon the distinction between an "abattoir" and a "slaughterhouse." In its zoning ordinance the city of Grand Rapids, at least, did not consider the terms synonymous. The distinction urged by defendants is that an abattoir is a public slaughterhouse where animals may be brought by the public to have them slaughtered by the operator of the abattoir, and that a slaughterhouse is a structure of a private nature used exclusively by its owner for his own purposes.

According to Webster's New International Dictionary (2d Ed.) an abattoir is "a slaughterhouse," and a slaughterhouse is "a building where beasts are butchered for the market; an abattoir." These dictionary definitions of these apparently synonymous words must, however, give way in this instance to the action of the city of Grand Rapids in its zoning ordinance's separate classifications and the language of its abattoir ordinance in which the words "a slaughterhouse" do not appear. Therefore, in the

light of the evidence in the instance case we are required to hold that the proposed structure in question is a slaughterhouse and not an abattoir.

Plaintiffs' argument does not rest entirely upon the interchangeable terminology but also upon claimed irregularities and invalidity of the action of the board of zoning appeals. It is apparent that this board did not sit as an appellate body but considered the application as an original matter, within the purview of the zoning ordinance, and particularly paragraph 7 thereof, which provides:

"In the 'E' industrial district, buildings and premises may be used for any purpose whatsoever not in conflict with any ordinance of the city of Grand Rapids regulating nuisances; provided, however, that no building shall be erected or premises used for any of the following uses until and unless the location of such use shall have been approved by the board of appeals after public notice has been given by publication 3 times in a daily newspaper of general circulation in the city, a statement of the proposed location and the time of a public hearing thereon, which shall be not less than 10 days from the date of the last publication. If, on such public hearing, it shall appear that the proposed user in the proposed location would be likely to be dangerous or offensive to residents of a contiguous or nearby district of a higher use, or contrary to public policy or offensive to public morals or decency, such user shall be denied."

The statute, 1 Comp. Laws 1929, § 2637 (d), as amended by Act No. 306, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 2637[d], Stat. Ann. 1946 Cum. Supp. § 5.2935), requiring due notice to all parties, including all owners of record of property within 300 feet of the premises in question, is applicable not only to the hearing of appeals but also to the original proceedings covered by subsection (a). The published notices did not comply with the quoted re-

quirements of the ordinance in that the time of hearing was not stated therein, although this hour was stated in the post-card notices sent to certain property owners. It is undisputed that some property owners did not receive any notice.

The time of the public hearing is an essential part of the published notice. In the absence of a designation of the hour of the hearing, this notice is of little value and the board could not legally act unless all interested parties were properly advised. We are, therefore, constrained to hold that the permit granted defendant by the board of zoning appeals was void.

Furthermore, defendants' application to the zoning board distinctly represents that, in addition to no offensive odors, "there will be no rendering" on the premises, and states the size of the building which they propose to erect. The record clearly shows that the building now proposed bears no relation to the size of the one described in the zoning appeal petition, and that animal fats will be rendered upon the premises. The claim of jurisdictional defects having been raised, we are not concerned with defendants' argument that plaintiffs are guilty of laches and estopped. Nor is defendants' cross appeal of any moment.

Plaintiffs are entitled to the equitable relief sought, but without prejudice, however, to defendants' right to institute a *de novo* action before the board of zoning appeals.

The decree of the trial court is vacated and one may be entered here in conformity with this opinion, with costs to plaintiffs.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.