NORTHERN MICHIGAN WATER COMPANY *v.*
PUBLIC SERVICE COMMISSION.

1. PUBLIC SERVICE COMMISSIONS—PUBLIC UTILITIES—WATER COMPANIES—REGULATION.

Water companies are public utilities under the jurisdiction of the public service commission and are therefore subject to regulation by the commission (CL 1948, § 460.6, as amended by PA 1960, No 44).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur, Waterworks and Water Companies § 2.
[2, 5] 43 Am Jur, Public Utilities § 206.
[3, 7, 8] 43 Am Jur, Public Utilities § 226.
[4, 6] 43 Am Jur, Public Utilities § 100 *et seq.*
[9] 43 Am Jur, Public Utilities § 186.
[10] 5 Am Jur 2d, Appeal and Error § 1009.

2. Same—Public Utility—Regulation of Rates.

> Acceptance for filing of the rates of a public utility by the staff of the public service commission pursuant to a general order of the commission is not tantamount to commission approval of the rates; therefore, mere filing of the rates does not legitimate them.

3. Administrative Law and Procedure—Public Utility—Regulation of Rates.

> Any statute or administrative ruling that purports to order a partial refund by a public utility of revenues derived by charging rates that were legal when charged is unconstitutional.

4. Public Service Commissions—Regulation of Rates—Definition —Lawful Rate.

> The universal test as to the lawfulness of public utility rates is whether or not the rates in question are just and reasonable (US Const, Ams 5, 14; PA 1967, No 19).

5. Same—Public Utilities—Regulation of Rates—Legality of Rates Charged.

> Nonoperative public utility rates are not necessarily illegal even though statute provides that public utility rate schedules are not operative until filed with and approved by the public service commission (CL 1948, § 460.57).

6. Same—Public Utilities—Regulation of Rates—Legality of Rates—Reasonableness.

> A public utility rate schedule filed with the public service commission, and approved and made operative by that commission, is conclusive as to the reasonableness of the rates contained in the schedule until those rates are changed prospectively by further proceedings; but rates that were never made operative by commission approval are still legal if reasonable (CL 1948, § 460.6, as amended by PA 1960, No 44; PA 1967, No 19).

7. Same—Public Utilities—Regulation of Rates—Refunds.

> Water companies are free to set their own rates at their peril until such time as the public service commission can rule on the rates; but if it is found that the rates were unreasonable, refunds may be ordered by the commission.

8. Same—Public Utilities—Regulation of Rates—Legality of Rates—Refunds.

The public service commission cannot order a refund of part of revenues received by public utility once it finds that the rate charged during the period in question was reasonable and lawful.

9. Same—Public Utilities—Regulation of Rates—Legality of Rates—Presumption.

No presumption that existing rates are reasonable or unreasonable prevails in the case of a new industry added to the list of public utilities and therefore having its rates subject to scrutiny for the first time.

10. Costs—Public Question—Public Utility Rates—Refunds.

No costs are awarded on appeal by a public utility of a public service commission ruling ordering it to refund to customers part of the rates it collected, a public question being involved.

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and T. G. Kavanagh and McGregor, JJ. reversing Ingham, Coash (Louis E.), J. Submitted April 2, 1968. (Calendar No. 6, Docket No. 51,713.) Decided October 21, 1968.

5 Mich App 635, reversed.

Petition by Northern Michigan Water Company, a Michigan corporation, filed with the Public Service Commission for an order authorizing a rate increase. Commission approved a future rate increase but ordered a refund as to money collected at higher rate before effective date of order. Plaintiff appealed to circuit court. Michigan Water Suppliers Association, Inc., a nonprofit Michigan corporation, was granted permission to intervene as plaintiff. Order vacated. Defendant appealed. Reversed and commission order affirmed by Court of Appeals. Plaintiff appeals. Reversed.

*Joseph Lavey,* for plaintiff Northern Michigan Water Company.

*John M. Veale (Matheson, Dixon & Bieneman,* of counsel), for intervening plaintiff Michigan Water Suppliers Association, Inc.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Hugh B. Anderson* and *David P. Van Note,* Assistant Attorneys General, for defendant.

T. E. BRENNAN, J.

## 1. THE FACTS.

This lawsuit arises by reason of a legislative oversight.

By PA 1960, No 44, effective April 19, 1960,[1] water companies were added to the list of public utilities coming under the jurisdiction of the Michigan public service commission. Automatically, therefore, on April 19, 1960, every water company in Michigan was obligated to file its rates with the commission and obtain commission approval thereof. CL 1948, § 460.57 (Stat Ann § 22.7).

Under a literal reading of the statutes, every water company in the State was out of business on April 19, 1960, but, naturally, they did not actually close their doors. They continued to do business just as they had always done. Some water companies, anticipating the need, and complying with the statute, did file rate schedules with the commission. One such company was the Northern Michigan Water Company, a corporation supplying water to customers in Houghton and Keweenaw

[1] Amending CL 1948, § 460.6 (Stat Ann 1965 Cum Supp § 22.13 [6]).

counties. It filed a rate schedule with the commission on January 6, 1961.

The record is not clear on the corporate history of Northern Michigan Water Company. The record does tell us that there was a Northern Michigan Water Company which is now known as Superior Water Company. It also tells us that there is a Northern Michigan Water Company which was formerly known as Peninsular Water Company. The record further tells us that the former was predecessor to the latter. Therefore we shall designate the two Northerns as Northern-Superior and Northern-Peninsular.

The company which filed its rate schedule with the commission on January 6, 1961, was Northern-Superior. Northern-Superior did not then, or ever, own the water system known as the Mohawk Location, the rates of which are involved in this litigation. The rate schedule it filed on January 6, 1961, did not, therefore, apply to the Mohawk Location. There is nothing in the record to show that the commission approved or disapproved the rates filed by Northern-Superior on January 6, 1961. It is assumed that Northern-Superior proceeded to charge the rates shown in its filed schedule, even though they had not been approved as required by CL 1948, § 460.57 (Stat Ann § 22.7).

In the meantime, there was a water system in existence at Mohawk Location in Keweenaw county. This system apparently had been established in 1933 by a trust deed between the Mohawk Mining Company and certain named trustees. While it is claimed in the appellees' brief, there is nothing in the record to show that the trustees of the Mohawk system ever filed a rate schedule with the commission.

On February 2, 1961, the commission issued its general order U-489 requiring all water companies

in Michigan to file with the commission schedules of rates they were charging as of April 19, 1960, the effective date of Act No 44. These filings were ordered to be made on or before April 1, 1961. General order U–489 did not contain any blanket approval by the commission of the April 19, 1960, water rates which it directed to be filed. It provided as follows:

"It is further ordered *that the filings herein ordered shall be accepted for filing by the staff of this commission,* subject to review and refiling if such filings are in conflict with the standards of service rules and regulations of this commission, when such standard of service rules and regulations are subsequently adopted by this commission." (Emphasis supplied.)

Acceptance for filing by the commission staff is not tantamount to approval by the commission. Therefore, even compliance with general order U–489 did not legitimatize the rates being charged by Michigan's water companies. As a matter of fact, it is apparent that the commission specifically intended not to give its blanket approval to existing water rates. It intended to approve water rates on a piecemeal basis, leaving Michigan's water companies in their hiatus of illegality, with no approved rates to charge.

Meanwhile, back at the Mohawk Location, Northern-Peninsular came upon the scene, and acquired the Mohawk system from its trustees on April 1, 1961. Upon acquisition, Northern-Peninsular established a new schedule of rates for customers of the Mohawk system. This new rate was the same rate being charged by Northern-Superior to its customers.

At this point, the trustees of Mohawk were out of the picture. By the commission's view, they had

operated illegally from April 19, 1960, to April 1, 1961, having filed no rates, nor obtained commission approval of any rates. Still, they had avoided noncompliance with the commission's general order U-489 by disposing of the system prior to the April 1st deadline.

Northern-Peninsular had the balance of the day within which to comply with general order U-489. Of course, Northern-Peninsular had not been operating Mohawk on April 19, 1960. Therefore, it was impossible for Northern-Peninsular to file with the commission "Three copies of each rate schedule effective on or before April 19, 1960." Since the mere filing of a rate schedule without commission approval would not have made any schedule of rates legally operative, the failure of Northern-Peninsular to file its rates on April 1, 1961, did not make any difference.

In due course, on June 30, 1961, Northern-Peninsular purchased the water properties of Northern-Superior, and adopted as its rate of water charges the rates which Northern-Superior had been charging and had filed with the commission. These were the same rates which Northern-Peninsular had been charging at Mohawk since its acquisition thereof on April 1, 1961. At this point we can drop the distinction between Northern-Peninsular and Northern-Superior. All of the water properties and all of the filings and nonfilings are merged into the one company, Northern Michigan Water Company. We can call it "Northern."

On December 29, 1961, Northern filed with the commission an application for approval of its April 1, 1961, Mohawk rates. On its face, the application appears to have been filed as a hedge against feared illegality. It disclaims commission jurisdiction in the setting of water rates, but prays that if the

commission assumes jurisdiction, it approve *in futuro* the rates established at Mohawk.

After due notice and hearing, the commission on August 30, 1962, made the following findings:

"A. Northern acquired the water distribution system at Mohawk Location, Keweenaw county, Michigan, on April 1, 1961, and said system has been operated as, and is, part of Northern's integrated water system.

"B. The water rates in effect at Mohawk Location prior to the acquisition of this system by Northern were lower than Northern's standard water rates applicable to its integrated system.

"C. Charging customers at Mohawk Location a lower rate than that charged other customers for like service on other parts of Northern's integrated water system would *result in illegal discrimination.*

"D. Northern's application for authorization to apply it standard rate schedules applicable to its integrated system for service rendered to customers at the Mohawk Location should be approved as of the date of this order.

"E. Northern increased the rates for water service at Mohawk Location upon acquisition of that system on April 1, 1961, without prior approval of this commission.

"F. Rates changed without prior commission approval *are illegal* rates and Northern should refund the difference between the amounts collected from customers at Mohawk Location, since its acquisition by Northern, and the amounts properly computed on the rates in effect prior to the acquisition of this system by Northern." (Emphasis supplied.)

and entered the following order:

"Therefore, it is ordered that:

"1. Northern Michigan Water Company shall apply its standard water rate schedules applicable

to its integrated service area for service rendered to customers at Mohawk Location, Keweenaw county, Michigan, on and after the date of this order.

"2. Northern Michigan Water Company shall refund to its past and present customers at Mohawk Location, Keweenaw county, Michigan, the difference between (1) the charges actually collected for water service during the period April 1, 1961, to the date of this order, and (2) *the proper charges for* water service computed by applying the water rates in effect at Mohawk Location prior to Northern Michigan Water Company's acquisition of the water distribution system at this location.

"3. The refund as ordered above shall be made either by check or by credit to the customer's account on or before November 1, 1962.

"4. On or before December 1, 1962, Northern Michigan Water Company shall file a statement, certified to by an officer of said company, to the effect that the refund as ordered above has been made.

"The commission specifically reserves jurisdiction of the matters herein contained and the authority to issue such further order or orders as the facts and circumstances may require." (Emphasis supplied.)

Northern filed for a rehearing, which was denied. Undaunted, Northern filed its complaint in Ingham county circuit court on November 5, 1962, asking that court to set aside the commission's order. The court granted Northern's prayer on December 18, 1964. Equally undaunted, the commission claimed an appeal to the Court of Appeals on January 6, 1965. Division 2 of that Court reversed the circuit court, and reinstated the order of the commission by an opinion rendered January 24, 1967, and reported in 5 Mich App 635. Intrigued by it all, we granted leave to appeal on May 4, 1967. 379 Mich

761. Not to be outdone, our legislative brethren enacted PA 1967, No 19,[2] given immediate effect on June 2, 1967.

It provides among other things:

"Sec. 4. All water companies shall furnish reasonably adequate service and facilities. All rates and charges by water companies shall be just and reasonable, and every unjust or unreasonable rate or charge is prohibited and declared to be unlawful. The commission shall have power to make, alter, amend or abolish any rate or charge for any service, and may regulate by rules or orders any service or facility.

"Sec. 5. Within 60 days after the effective date of this act, all water companies which have not heretofore filed with the commission a schedule of rates and charges and rules relating to the rendering of water service shall file a schedule of rates and charges and rules, which shall be the rates and charges and rules in effect on the effective date of this act. Thereafter, no rates, charges or rules shall be changed by any water company without application to the commission, notice thereof to the municipalities affected by the change and approval of the commission. * * *

"Sec. 7. It shall be unlawful for any water company to make or give any preference or advantage to any person, copartnership, corporation or locality, or subject any person, copartnership, corporation or locality, to any prejudice or disadvantage in any respect whatever.

"Sec. 8. It shall be unlawful for any water company to directly or indirectly charge, demand, collect or receive a greater or less compensation for any service rendered, furnished or performed than that prescribed by and contained in its schedules on file with and approved by the commission."

[2] MCLA §§ 486.551–486.571 (Stat Ann 1968 Cum Supp §§ 22.1730 [1]–22.1730[21]).

It further provides:

"Sec. 18. All rules and regulations and orders of the commission heretofore adopted or issued, relating to water companies or the business thereof, are ratified and confirmed."

## 2. THE ISSUES.

All parties now concede that the commission has the power to regulate water companies. The dispute here relates entirely to the refund which was ordered by the commission.

We do not address ourselves to the question of whether the commission has the power to order a refund in a proper case. Neither do we address ourselves to the effect of PA 1967, No 19, § 18, on these proceedings. If the rates involved were legal when charged, the act would be unconstitutional. If the rates involved were illegal at the time, section 18 would be unnecessary.

The only question in this lawsuit is whether the rates charged by the plaintiff at its Mohawk Location were legal or illegal during the period of April 1, 1961, to August 30, 1962.

## 3. THE PRECEDENTS.

This case involves the question of the legality of rates charged by a company declared to be a public utility, where the statute declaring such company to be a public utility makes no provision for initial rates to be charged and provides no machinery for the approval of rates except prospectively.

Considering the issue in those terms, none of the cases cited by counsel are directly in point.

*Michigan Bell Telephone Co.* v. *Public Service Commission* (1946), 315 Mich 533, involves an at-

tempt to require refund of charges which were admittedly approved by the commission when made.

*Jackson* v. *Consumers Power Company* (1945), 312 Mich 437, involved a question of whether the utility could promulgate rates after its franchise-fixed rate obligations had expired.

*Huron Cement Co.* v. *Public Service Commission* (1958), 351 Mich 255, had to do with the commission's authority to order a utility to serve a new area.

Gas company cases and railroad cases cited are not directly on the point. *Munn* v. *Illinois* (1877), 94 US 113 (24 L Ed 77), and other Federal cases cited in the briefs establish the general proposition, as claimed by the commission, that "The universal test as to the lawfulness of utility rates is that such rates be 'just and reasonable.' That is the common-law standard, and also the constitutional standard under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution." As noted before, this is the same standard contained in PA 1967, No 19.

## 4. THE REASONING.

The commission argues that where a public utility fails to file its rates, as required by law, the lawful rate is the rate in effect on the day that the obligation to file arose. No authorities are cited which sustain that broad conclusion in the context of the facts in the case at bar.

Here, water companies were declared to be public utilities on April 19, 1960. As of that date the obligation to file rate schedules arose. But that obligation could not have been complied with in the terms of the statute.

CL 1948, § 460.57 (Stat Ann § 22.7), provides:

*"Schedules of rates in such form and in such detail as the commission may direct shall be filed."*

Admittedly, as of April 19, 1960, the commission had not directed the form and the detail of the filing it would require. It did not direct the form and detail of the required filing until it promulgated general order U–489 on February 2, 1961.

Further, and more importantly, CL 1948, § 460.57 (Stat Ann § 22.7) does not say that rates charged but not filed with and approved by the commission are *unlawful*. It says,

"No such schedule shall be *operative* unless and until it has been approved by the commission."

Clearly, every water company in the State which does not have in hand an order of the commission approving its schedule of rates does not have a schedule which is legally operative, but it does not follow that rates charged from a nonoperative schedule are illegal. The test of legality is still reasonableness. A schedule filed and made operative by commission approval is conclusive as to the reasonableness of the rates established therein, until changed prospectively after due proceedings taken; but rates charged where no schedule has ever been operative are legal if they are reasonable. PA 1960, No 44, did not declare, as did PA 1967, No 19, that rates in force on the date of the act were to be filed and charged until changed with commission approval.

There may have been many water companies which were charging unreasonable rates on April 19, 1960. Indeed the very fact that the act was passed would seem to indicate that such was the case. It is not to be presumed, indeed it would be a frustration of the statute to presume, that the legislature intended to clothe all April 19, 1960, water rates with the conclusive presumption of reasonableness and lawfulness which would follow upon fixing existing rates by law.

The legislature left the water companies free to fix their own rates at their peril, at least until such time as schedules were filed and rates were approved by the commission.

Here, the commission approved the plaintiff's Mohawk rate as reasonable and lawful. That being the case, there was no basis upon which it could order a refund. As a matter of fact, the commission found that any other rate applied to Mohawk would be discriminatory and unlawful. By its own findings, the commission ordered an unlawful, discriminatory rebate.

But it is argued that unless prior filing and approval be required for legality, the utility which increases its rates without commission approval is in a better position than the utility which dutifully requests approval of an interim rate and files a bond conditioned on a refund in case the rate is not allowed.

The argument does not follow. Where existing rates have been filed and approved, they are conclusively reasonable, and any ex parte increase is conclusively unreasonable, unlawful, and refundable. But where existing rates have never been filed and approved, as in the case of a new industry added to the list of public utilities, then there is no presumption that existing rates are reasonable or unreasonable, and any such rates charged prior to commission approval are collected at the utilities' peril, as they may later be found to have been unreasonable, unlawful, and subject to refund.

## 5. CONCLUSION.

For the edification of the water industry, we summarize as follows:

1. All private water companies became public utilities on April 19, 1960.

2. Water rates, from and after April 19, 1960, were required to be just and reasonable.

3. Any water rates charged after April 19, 1960, without prior filing and approval by the commission, if also unreasonable in amount, may, upon due notice and hearing, be found to have been unlawful, and overcharges ordered refunded by the commission.

4. Water charges, made pursuant to schedules filed with and approved by the commission, are conclusively presumed reasonable and lawful, may only be changed as provided by law, and are not refundable.

5. Water companies with less than 175 customers ceased to be public utilities on June 2, 1967.

The judgment of the Court of Appeals is reversed. No costs, a public question being involved.

DETHMERS, C. J., and BLACK and O'HARA, JJ., concurred with T. E. BRENNAN, J.

KELLY, T. M. KAVANAGH, and ADAMS, JJ., concurred in result.