BUILDING OWNERS AND MANAGERS ASSOCIATION OF
METROPOLITAN DETROIT v PUBLIC SERVICE COMMISSION

Docket No. 73552, 73553. Argued November 14, 1985 (Calendar No. 6).
—Decided March 17, 1986.

The Public Service Commission granted the Detroit Edison Company a three-year steam rate increase in 1970 for customers within the City of Detroit. The Building Owners & Managers Association of Metropolitan Detroit and others brought an action, later certified as a class action, in the Ingham Circuit Court against the Public Service Commission and the Detroit Edison Company, appealing the rate increase and alleging that proper notice of the commission's hearing on Detroit Edison's requested rate increase had not been given. The court, Ray C. Hotchkiss, J., found that the notice failed to satisfy statutory requirements and due process guarantees, remanded the case to the commission, and ordered it to give adequate notice to steam heat ratepayers and hold a new hearing on the reasonableness of the increase. On remand, the commission determined the rates in effect from September 21, 1970, through September 6, 1973, to be reasonable and proper. Following further challenges in the Ingham Circuit Court and a second remand, the commission again found the increase to be fair, reasonable, and proper, and supported by competent, material, and substantial evidence. The circuit court affirmed. The Court of Appeals, MAC-KENZIE, P.J., and M. J. KELLY and EVERETT, JJ., affirmed (Docket Nos. 60227, 60624). The plaintiffs appeal.

In an opinion by Justice BRICKLEY, joined by Chief Justice WILLIAMS and Justices CAVANAGH, BOYLE, and RILEY, the Supreme Court *held:*

Validation following proper notice and hearings of a rate increase for steam heat which occurred after the Public Service Commission had ordered the increase and after a trial court remanded the question of the rate increase for such notice and hearings in response to a challenge by ratepayers was not

REFERENCE FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Public Utilities §§ 240-243.
See the annotations in the ALR3d/4th Quick Index under Public Utilities.

retroactive ratemaking and did not entitle the ratepayers to a refund of the rate increase.

1. The Public Service Commission is vested with the power and jurisdiction to regulate public utilities, including the power to fix rates. Where a rate increase is sought by a utility, notice must be given within the affected service area. Pending submission of proofs by all interested parties, the commission may grant partial and immediate increases, provided that notice is given to interested parties and such parties are afforded an opportunity for a full and complete hearing.

2. In this case, the commission deviated from the notice requirement. Proper notice, a full and complete hearing, and the determination of the reasonableness of the rate increase occurred after the increase was authorized by the commission and after remands by the trial court for such notice and hearing. The rate was not changed after the fact; rather, it was found to be reasonable by a subsequent determination. The challenge of the rate based on a procedural flaw did not render the rate increase retroactive upon subsequent validation. The fact that the method employed to reach the result may have had certain infirmities is not sufficient to ·render the rate increase void and to order a refund. Michigan law supports the principle that, while a refund might be required in certain cases, it is not necessary when the contested rate is ultimately determined to be reasonable following proper notice and a complete hearing as required by statute.

Affirmed.

Justices LEVIN and ARCHER took no part in the decision of this case.

131 Mich App 504; 346 NW2d 581 (1984) affirmed.

PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATE INCREASES.

Validation following proper notice and hearings of a rate increase for steam heat which occurred after the Public Service Commission had ordered the increase and after a trial court remanded the question of the rate increase for such notice and hearings in response to a challenge by ratepayers was not retroactive ratemaking and did not entitle the ratepayers to a refund of the rate increase.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Anderson,* Assistant Attorney General, for the Attorney General.

*Barris, Sott, Denn & Driker* (by *Sharon M. Woods, David K. McDonnell,* and *Morley Witus*) for the plaintiffs.

*Kenneth A. McKanders* for Wayne State University.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey,* Assistant Attorney General, for the Public Service Commission.

*Christopher C. Nern, A. Robert Pierce, Jr.,* and *John H. Flynn* and *Fischer, Franklin, Ford, Simon & Hogg* (by *George Hogg, Jr., Arthur J. LeVasseur,* and *Sidney M. Berman*) for The Detroit Edison Company.

BRICKLEY, J. This class action comes to us on the issue whether a three-year steam rate increase allotted to the Detroit Edison Company by the Public Service Commission, allegedly without sufficient statutory or constitutional notice, must be refunded to the plaintiff ratepayers even though the rate increase was subsequently upheld as reasonable following full notice and a hearing. We hold that under these circumstances such a remedy is not required.

I

The history of this case involves sixteen years of remands and appeals, beginning in May, 1970, with an application to the PSC by Edison seeking authority to increase rates charged to its steam customers within the City of Detroit.

The PSC established the initial hearing date as September 1, 1970, and, pursuant to its historical practice and custom, mailed its notice of hearing,

dated August 21, 1970, to the City of Detroit only, the sole municipality in which steam service was provided by Edison. The only other notice of hearing sent by the PSC at that time was to Edison.

Hearings on that application were held in September, 1970. The City of Detroit did not file an appearance or participate in the proceedings. Cadillac Overall Supply Company's petition to intervene was granted, and it participated in the proceedings. Three corporate ratepayers also appeared and made statements.

On September 21, 1970, a delayed petition for intervention and rehearing was filed with the PSC by Building Owners and Managers Association of Metropolitan Detroit (hereinafter BOMA), one of the plaintiffs in this class action.

On the same day, the PSC entered two orders in this matter as follows:

1. A steam rate order in which the PSC authorized amended rates for Edison designed to produce additional annual revenues in the amount of $2,743,800.

2. An opinion and order in which BOMA's delayed petition for intervention and rehearing was denied.

On October 19, 1970, BOMA, together with an additional group of steam ratepayers, appealed the PSC's order to the Ingham Circuit Court. Through various orders of that court, the City of Detroit, Wayne County, Wayne State University, and the Attorney General were authorized to intervene as parties plaintiff, and Edison was authorized to intervene as a party defendant. The court subsequently certified the suit as a class action.

In February, 1972, plaintiffs moved for summary judgment, declaring the September 21, 1970, steam rate order of the PSC null and void. They sought,

for the first time, a full refund of the steam rate increase collected thereunder.[1]

In April, 1973, this motion was granted in part, the court ruling that the commission notice sent solely to the City of Detroit failed to satisfy either the requirements of MCL 460.6a; MSA 22.13(6a) or the due process guarantees of the United States and Michigan Constitutions. Rather than ordering a refund, however, the court remanded the matter to the PSC, and ordered it to give adequate notice to steam heat ratepayers and hold a new hearing on the reasonableness of the increase. The specific language of the court's order of April 11, 1973, is as follows:

> Now Therefore, IT IS ORDERED, that this matter be remanded to the Michigan Public Service Commission for the purpose of giving adequate notice to individual users consistent with the rulings of this Court.
>
> IT IS FURTHER ORDERED, that no action be taken as to the issue of whether the Public Service Commission findings were reasonable as to the steam rates increase until such time as the Commission has taken further evidence as submitted by the Plaintiff parties or other interested parties and redetermined such rates if deemed appropriate.

Plaintiffs moved for rehearing before the circuit court, requesting that the court (a) prohibit enforcement of the PSC's 1970 rate order and (b) order Edison to refund all sums collected pursuant

---

[1] In their initial complaint, plaintiffs had not specifically requested a refund; rather, the complaint prayed that "[a]n order be entered finding and determining that Defendant's order denying Association's Delayed Petition for Intervention and Rehearing was improper . . . [and] such additional relief as shall be just and equitable."

to that order.[2] Rehearing was denied in January, 1974; however, the court ordered Detroit Edison to post a $10,000,000 bond in order to ensure a refund if, on remand, the rate increase was found to be unreasonable:

> This Court's Opinion, rendered April 11, 1973, made no determination as to whether the steam rates granted to Detroit Edison by the Michigan Public Service Commission on September 21, 1970, were unreasonable or confiscatory. The only determination made was that proper notice of the application to increase steam rates must be given to those customers of Detroit Edison. The remand to the Public Service Commission was for the purpose of giving the notice required and then having a subsequent hearing as to whether the rates granted in 1970 were excessive or not taking into consideration any evidence that existed at the time of the original rate hearings which any interested party may wish to submit. [Opinion and Order Denying Plaintiff's Motion for Supplemental Order, Ingham County Circuit Court, Jan. 11, 1974.]

Plaintiffs appealed the circuit court's refusal to order a refund to the United States Supreme Court, which denied certiorari on December 9, 1974.[3]

On remand, a notice of hearing was issued by the PSC on June 18, 1975. Pursuant thereto, Edison

[2] Edison filed an application for another rate increase in 1972. Hearings thereon were held following complete notice both by publication and by mailing individual notice to affected ratepayers. The application was granted on September 6, 1973, and is not the subject of this appeal. A third increase was granted in 1977, also following complete notice and a hearing. The only increase involved in this appeal, therefore, is the one granted from September 21, 1970, to September 6, 1973.

[3] Leave to appeal was denied by the Court of Appeals in an order dated May 9, 1974, by this Court on July 24, 1974, 392 Mich 776, and by the United States Supreme Court on December 9, 1974, 419 US 1057 (1974).

gave notice of the rate proceedings by publication in the Detroit Free Press and the Detroit News and by mailing individual notices to customers of record.[4] The hearing extended over a ten-month period, with most of the plaintiffs in this action actively participating. Upon completion of the hearing, the record comprised thirteen volumes of transcript and forty-eight exhibits.

On March 14, 1977, the PSC, in a two-to-one decision, determined that the rates in effect from September 21, 1970, through September 6, 1973, were reasonable and proper. Plaintiffs responded by extensively amending their original complaint and by filing a new complaint in Ingham Circuit Court, alleging that both the September 21, 1970, and March 14, 1977, PSC orders were unreasonable and unlawful, and requesting a full refund of all amounts collected thereunder. Following considerable sparring over the PSC's consideration, or lack thereof, of certain evidence, the case was yet again remanded to the PSC for reconsideration of its 1977 order in light of evidence adduced at post-1970 Edison steam rate hearings regarding the "declining industry"[5] theory and its effect on rate setting.

On April 15, 1980, the PSC rejected all of plaintiffs' arguments, and in an extensive opinion and order, found the September, 1970, rate increase to

---

[4] Edison states in its brief on appeal to this Court, and the plaintiffs have not denied, that it and the PSC have changed their notice procedure as a result of this lawsuit. Notice of PSC steam rate proceedings is now given both by publication in newspapers of general circulation and by mailing individual notices to customers of record.

[5] One of plaintiffs' experts, John McCabe, defined a declining industry as one in which the product or service is no longer able to compete successfully in the marketplace. Application of the declining industry theory would yield a finding that an increase based on a fair rate of return to the utility would be unreasonably large, because such an increase would further decrease the ability of the product to compete in the marketplace. To keep the product of such a declining industry viable and competitive, increases which provide a lower-than-average rate of return to the utility are sometimes justified.

be "fair, reasonable and proper, [and] . . . supported by competent, material and substantial evidence."

Plaintiffs appealed to the circuit court, which affirmed the PSC's order in an opinion dated September 11, 1981, and dismissed plaintiffs' second complaint. The Court of Appeals affirmed the circuit court's decision. 131 Mich App 504; 346 NW2d 581 (1984). The Court assumed without deciding that "the circuit court correctly concluded that procedural due process and § 6a [the notice provision of MCL 460.6; MSA 22.13(6); quoted below] entitled plaintiffs to notice of the hearing before defendant commission, and that the notice given to the City of Detroit was not adequate notice to plaintiffs." *Id.* at 508. The Court found it unnecessary to decide this question because it rejected both of plaintiffs' arguments, holding that 1) the notice provision of MCL 460.6; MSA 22.13(6) is not a prerequisite to the PSC's jurisdiction over the case, and 2) that despite such assumed defects, the trial court was not required "to declare the original rate increase order void ab initio and to order a refund to plaintiffs. Rather, we find the court acted properly in remanding to the defendant commission for another hearing with adequate notice, leaving intact the rate increase previously granted unless found to be unreasonable upon rehearing." *Id.* at 509.

We granted leave to appeal, 420 Mich 852 (1984), and affirm the judgment of the Court of Appeals.

## II

Like the Court of Appeals, we approach our analysis with the conclusion that our resolution of the jurisdiction and refund issues makes unnecessary any finding as to whether the circuit court

correctly concluded that the notice given of the first rate determination proceeding was either statutorily or constitutionally[6] defective.

The principal issue for our consideration, then, is whether, assuming arguendo that the notice given was defective, the rate increase that resulted therefrom can be validated by subsequent adequate notice, or whether the defective notice rendered the increase void ab initio, thereby mandating a complete refund of the sums collected thereunder.

Initially, we must consider plaintiffs' argument that, due to the defective notice given of the initial PSC rate increase proceeding, the PSC was without jurisdiction to enter any rate order whatsoever. Because of the lack of jurisdiction, argue the plaintiffs, there was nothing to subsequently validate; accordingly, the commission's 1977 and 1980 orders allowing the rate increase amounted to retroactive ratemaking, which is prohibited. *Michigan Bell Telephone Co v PSC,* 315 Mich 533; 24 NW2d 200 (1946).

The relevant statutory provisions governing the PSC's jurisdiction and the notice requirement provide as follows:[7]

The public service commission is vested with

---

[6] In addition to the claim that the notice was constitutionally defective, the appellants also argue that such a defect cannot be corrected and that *only* a refund can redress the constitutional violation. We reject this claim because the only authorities cited by appellant involve refunds where there was an exaction pursuant to unconstitutional legislation, *Metro Homes, Inc v City of Warren,* 19 Mich App 664; 173 NW2d 230 (1969), *cert den* 398 US 959 (1970), and *Theatre Control Corp v Detroit,* 370 Mich 382; 121 NW2d 828 (1963), and refund of excess railroad charges that were ultimately held to be unreasonable. *Fletcher Paper Co v Detroit & M R Co,* 198 Mich 469; 164 NW 528 (1917), *aff'd* 248 US 30; 39 S Ct 13; 63 L Ed 107 (1918).

[7] Section 6a was amended by 1972 PA 300, 1982 PA 212, and 1982 PA 304 to provide for fuel adjustment clauses. These amendments have no relevance to the issues before us.

complete power and jurisdiction to regulate all public utilities in the state except a municipally owned utility, the owner of a renewable resource power production facility as provided in section 6d, and except as otherwise restricted by law. *The public service commission is vested with the power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of such public utilities.* The public service commission is further granted the power and jurisdiction to hear and pass upon all matters pertaining to, necessary, or incident to the regulation of all public utilities, including electric light and power companies, whether private, corporate, or cooperative, gas companies, water, telephone, telegraph, oil, gas, and pipeline companies, motor carriers, and all public transportation and communication agencies other than railroads and railroad companies. [MCL 460.6; MSA 22.13(6). Emphasis added.]

In addition to the rights, powers and duties vested in and imposed on said commission by the preceding section, *its jurisdiction shall be deemed to extend to and include the control and regulation, including the fixing of rates and charges, of all public utilities within this state, producing, transmitting, delivering or furnishing steam for heating or power, or gas for heating or lighting purposes for the public use.* [MCL 460.54; MSA 22.4. Emphasis added.]

When any finding or order is sought by any gas, telephone or electric utility to increase its rates and charges or to alter, change or amend any rate or rate schedules, the effect of which will be to increase the cost of services to its customers, *notice shall be given within the service area to be affected.* When such utility shall have placed in evidence facts relied upon to support its petition or application to so increase its rates and charges, or to so alter, change or amend any rate or rate schedules, the commission, *pending the submission of all proofs by any interested parties, may in its*

*discretion and upon written motion by such utility
make a finding and enter an order granting par-
tial and immediate relief, after first having given
notice to the interested parties within the service
area to be affected in the manner ordered by the
commission, and after having afforded to such
interested parties reasonable opportunity for a full
and complete* hearing: Provided, That no such
finding or order shall be authorized or approved ex
parte, nor until the commission's technical staff
has made an investigation and report: And pro-
vided further, That any alteration or amendment
in rates or rate schedules applied for by any public
utility which will result in no increase in the cost
of service to its customers may be authorized and
approved without any notice or hearing. [MCL
460.6a; MSA 22.13(6a). Emphasis added.]

We first note that the jurisdiction of the PSC is
"vested" in separate sections than the one which
contains the notice requirements. This argues
against the notion that lack of adequate notice is a
jurisdictional bar. On the other hand, the notice
statute, § 6a, in addition to requiring that "notice
shall be given," further provides that any change
in rates *not* amounting to an increase "may be
authorized and approved without any notice or
hearing." These clauses taken together certainly
suggest that some type of notice is, at the least, a
prerequisite to authorization of an increase.

Appellants cite and rely upon *G & A Truck Line
v Public Service Comm,* 337 Mich 300; 60 NW2d
285 (1953), *Consumers Power Co v Public Utilities
Comm,* 273 Mich 184; 262 NW 664 (1935), *Kirkby v
Public Service Comm,* 320 Mich 608; 32 NW2d 1
(1948), and *Baura v Thomasma,* 321 Mich 139; 32
NW2d 369 (1948), for their jurisdictional argu-
ment.

In *G & A Truck Line, supra,* the PSC rescinded
an increased rate authorization of the plaintiff

common carrier, when it was discovered that the authorization had been based only on an affidavit filed with it, but without the appropriate application, notice, or hearing required by the statute and the PSC's own rules. We held there that because of the "failure to file the application, give proper notice of hearing and conduct such a hearing, *the commission acquired no jurisdiction over the subject matter* and the order . . . was invalid and of no effect." We also held:

> Moreover, such authority could not be brought into existence [by subsequent order] because such matters were not before the commission nor inquired into and therefore could not be made a valid part [of the subsequent] order. [*Id.* at 306.]

In *Consumers Power Co, supra,* the applicable statute authorized the commission to conduct audits "in connection with any rate or service hearing or investigation." We held that an ex parte order by the then-existing Public Utilities Commission, directing an audit of the records of Consumers Power without any notice of or hearing before the order was issued, was improper. We stated:

> Without expressing any opinion as to the extent of an audit or appraisal which the commission may order to be made, we are of the opinion that it had no jurisdiction to make the order appealed from without notice to the parties affected by the complaints made to it. [*Id.* at 187-188.]

In *Kirkby, supra,* we vacated a PSC order which had granted a motor carrier authority beyond that which it applied for in its initial request, on the ground that the authorization was void as exceeding the scope of the commission's powers.

In *Baura, supra,* we declared a slaughterhouse

construction permit void where the notice require-
ment of the zoning board was defective. We also
stated that the decision was "without prejudice
. . . [to allowing the defendants] to institute a de
novo action before the board of zoning appeals."
*Id.* at 146.

We agree with the Court of Appeals that these
cases are all distinguishable, and therefore not
helpful in resolving the issue before us.

In *G & A Truck Line, supra,* the statute then in
effect vested in the PSC "power and authority . . .
upon the filing of the application." In *Kirkby,
supra,* at 612, no application at all was filed. The
order was void because its substance clearly ex-
ceeded the scope of the PSC's statutory authority.
In *Consumers Power Co, supra,* at 187, the applica-
ble statute granted the PSC the authority to make
such audit as it deemed necessary only "in connec-
tion with any rate or service hearing or investiga-
tion . . . ."

*Consumers Power Co, Kirkby,* and *G & A Truck
Line,* all involved defects which were more closely
linked to the exercise of jurisdiction than the lack
of adequate notice in the present case.

Like the Court of Appeals, we find *Baura* distin-
guishable. In the law of zoning, the validity of
essentially irrevocable decisions often hinges upon
compliance upon notice requirements. As such, we
do not find such precedent persuasive authority on
the issue of proper notice in the highly regulated
field of utility rate making.

Finally, none of these cases involved a situation
where the holding of invalidity of the notice or
procedure resulted in a utility being required to
refund any advantages it had secured under the
invalidated orders.

The requirement that "notice shall be given
within the service area to be affected" is unspeci-

fied as to whom and how such a notice must be communicated, and would presumably vary depending on the service involved and the size and nature of the ratepayer group. In contrast, as is evidenced by the cited cases, jurisdictional prerequisites almost always contain very specific and ascertainable criteria. While we have not found it necessary to interpret the notice requirement in this case, we can envision the difficulty in judicially prescribing a standard that would have universal application. This points to the peril that would result if the Legislature had intended to have every approved rate subject to possible ab initio invalidation years later due to a flaw in the manner of providing notice.

Furthermore, the Legislature has expressed its preference for rate order validity in MCL 462.25; MSA 22.44:

> All rates, fares, charges, classification and joint rates fixed by the commission and all regulations, practices and services prescribed by the commission shall be in force and shall be prima facie, lawful and reasonable until finally found otherwise in an action brought for the purpose pursuant to the provisions of section 26 of this act, or until changed or modified by the commission as provided for in section 24 of this act.

Our review of the cited authority, the statutory scheme, and the arguments offered by the plaintiffs does not convince us that the Court of Appeals was in error in finding that a deviation from the notice requirement does not preclude the exercise of the PSC's jurisdiction. Certainly, however, it is the intent of § 6a that the notice requirement be complied with and that the absence of such notice subjects the rate set pursuant thereto to close scrutiny.

This leads to the question whether an otherwise valid rate increase can be validated by a subsequent determination of reasonableness after proper notice and a full and complete hearing. The plaintiffs have vigorously argued since almost the inception of this lawsuit[8] that the only proper remedy is a full refund of those steam rates paid between September 21, 1970, and September 6, 1973.

## III

The plaintiffs cite foreign authority supporting their position that flawed rate orders are subject to refund, rather than subsequent validation. See, e.g., *Chicago, M, SP & P R Co v Alouette Peat Products,* 253 F2d 449 (CA 9, 1957); *Los Angeles v Public Utilities Comm,* 7 Cal 3d 331; 102 Cal Rptr 313; 497 P2d 785 (1972); *Saturn Oil & Gas Co v Northern Natural Gas Co,* 359 F2d 297 (CA 8, 1966).

Authority from Michigan and other jurisdictions, however, supports defendants' contentions that no refund of the monies paid pursuant to the invalid order is mandated. Although there exists no Michigan authority directly on point, precedent from this Court suggests that a refund of monies paid pursuant to an invalid rate order will be mandated only if the order is subsequently found to be unreasonable. See, e.g., *Northern Michigan Water Co v Public Service Comm,* 381 Mich 340; 161 NW2d 584 (1968); *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973).[9] By implication, these cases

---

[8] See n 1.

[9] In *Northern Michigan Water Co v Public Service Comm,* 381 Mich 340; 161 NW2d 584 (1968), the question was whether the PSC properly ordered a refund of the difference between rates collected before and

support a holding that a procedurally defective rate increase will not be subject to refund if it is subsequently determined that the actual rates charged pursuant thereto were reasonable. Accordingly, Michigan law supports the principle that, while a refund might be required in certain cases, it is not necessary when the contested rate is ultimately determined to be reasonable following proper notice and a complete hearing, as required by the statute.

Other authority on this issue is not heavily weighted towards plaintiffs' view. In *Federal Power Comm v Hope Natural Gas Co,* 320 US 591; 64 S Ct 281; 88 L Ed 333 (1944), the utility, Hope

after the PSC assumed jurisdiction over water utility companies. The applicable statute had made no provision for initial rates to be charged; however, the PSC subsequently determined the rates to be reasonable. This Court held that the PSC could not order a refund of monies paid pursuant to a rate, set by the utility itself before the PSC developed its own rate schedule, that the PSC had determined to be reasonable:

"Here, the commission approved the plaintiff's Mohawk rate as reasonable and lawful. That being the case, there was no basis upon which it could order a refund.

\*    \*    \*

"[W]here existing rates have never been filed and approved, as in the case of a new industry added to the list of public utilities, then there is no presumption that existing rates are reasonable or unreasonable, and any such rates charged prior to commission approval are collected at the utilities' peril, *as they may later be found to have been unreasonable, unlawful, and subject to refund." Id.* at 353. (Emphasis added.)

In *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973), this Court allowed a temporary increase of gas rates at a level deemed too high by the PSC. We held that the circuit court had properly allowed an injunction preventing the PSC from interfering with the higher rate, because Michigan Consolidated had posted a $3,000,000 bond to ensure refunds if the rate increase were determined to be unreasonable by the appellate court. Our holding was premised upon both the statutory prohibition against retroactive rate increases and the fact that a bond was posted to provide for a refund in the event that the rates were found to be unreasonable and unlawful. This result best insured the protection of both the consumer's interest against unreasonable rates and the utility's interest in avoiding unreasonably low, and therefore confiscatory, rates.

Natural Gas, sought to have a Federal Power Commission order determining its rates invalidated because of technical errors in the rate-making process. The Supreme Court stated:

> *Under the statutory standard of "just and reasonable" it is the result reached not the method employed which is controlling.* Cf. *Los Angeles Gas & E Corp v Railroad Comm,* 289 US 287, 304-305, 314 [53 S Ct 637; 72 L Ed 1180 (1933)]; *West Ohio Gas Co v Public Utilities Comm,* 294 US 63, 70 [55 S Ct 316; 79 L Ed 761 (1935)]; *West v Chesapeake & P Tel Co,* 295 US 662, 692-693 [55 S Ct 894; 79 L Ed 1640 (1935)] (dissenting opinion). It is not theory but the impact of the rate order which counts. *If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important.* Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. Cf. *Railroad Comm v Cumberland Tel & T Co,* 212 US 414 [29 S Ct 357; 53 L Ed 577 (1909)]; *Lindheimer v Illinois Bell Tel Co,* [292 US 151, 164, 169; 54 S Ct 658; 78 L Ed 1182 (1933)]; *Railroad Comm v Pacific Gas & E Co,* 302 US 388, 401 [58 S Ct 334; 82 L Ed 319 (1938)].
>
> The rate-making process under the Act, *i.e.,* the fixing of "just and reasonable" rates, involves a balancing of the investor and the consumer interests. Thus we stated in the *Natural Gas Pipeline Co* case that "regulation does not insure that the business shall produce net revenues." [*Federal Power Comm v Natural Gas Pipeline Co*] 315 US [575] 590 [62 S Ct 736; 86 L Ed 1052 (1942)]. But such considerations aside, the investor interest has a legitimate concern with the financial integrity of

the company whose rates are being regulated. From the investor or company point of view it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business. [320 US 602-603. Emphasis added.]

The circuit court in this case, in ordering a remand to the PSC for another hearing, following complete notice, to determine the reasonableness of the original order, relied on MCL 462.26a; MSA 22.45(a), which governs the procedure to be followed in lawsuits challenging any action by the PSC:

[T]he said circuit court in chancery is hereby given jurisdiction of such suits and empowered to affirm, vacate or set aside the order of the commission in whole or in part, and to make such other order or decree as the court shall decide to be in accordance with the facts and the law.

The trial court, in requiring Edison to post a $10,000,000 bond to ensure a refund in the event that the September, 1970, rate order was determined to be unreasonable or unlawful, protected both the ratepayers and the property rights of the utility, because it was ensured a fair rate of return until the conclusion of the rehearing.

In light of the fact that any defect in the notice requirement was the fault of neither the utility nor the ratepayers, we find this remedy to comply with the equitable nature of MCL 462.26a; MSA 22.45(a) and to be consistent with Michigan precedent related to subsequent validation. That precedent indicates neither that complete notice was a jurisdictional prerequisite in this case nor that a refund is always required where there is a nonjurisdictional imperfection in the rate-making procedure.

## IV

Finally, plaintiffs contend that the subsequent validation of the 1970 rate order amounted to a retroactive rate increase that is prohibited by law. *Michigan Bell Telephone Co v Public Service Comm, supra.*

We do not agree. A rate was set and a subsequent hearing supplied the necessary finding of reasonableness after proper notice to the ratepayer. The rate was not changed after the fact, but found to be reasonable by a subsequent determination. Contrary to *Michigan Bell, supra,* where we prohibited a refund to ratepayers ordered by the Public Service Commission from rates in effect prior to the order, the 1977 order contained exactly the same rate as the initial order in this case. The plaintiffs' claim would be plausible only if we followed their ab initio invalidity argument.

A challenge to a rate based on a procedural flaw does not render its subsequent validation a retroactive rate.[10]

## V

Finding as we do that the September, 1970, order is valid, the plaintiffs ask us in the alternative to reverse the PSC's finding that the 1970 rate increase was reasonable. They argue that the PSC erred in refusing to apply their proposed "declining industry" theory.[11]

A review of the lower court decisions and of the arguments of the parties convinces us that this issue is without merit.

---

[10] We note that § 6a itself prescribes a similar procedure for interim rate increases "pending the submission of all proofs." Thus, the notice section itself provides for a . . . validation of a previously determined rate increase.

[11] See n 5.

CONCLUSION

We conclude that the lower courts did not err in upholding the validity of the remand order which cured the PSC's original September, 1970, rate order of any possible constitutional or statutory defects that may have occurred in the hearing that preceded that order, that the ratepayers are not entitled to a refund, and that such a subsequent validation does not amount to a retroactive rate increase.

Affirmed.

WILLIAMS, C.J., and CAVANAGH, BOYLE, and RILEY, JJ., concurred with BRICKLEY, J.

LEVIN and ARCHER, JJ., took no part in the decision of this case.